**Barbara JINKS, for herself and for all others similarly situated, Plaintiff-Appellant,**

**v.**

**Dr. Benjamin E. MAYS et al., Defendants-Appellees.**

**No. 72-1079.**

United States Court of Appeals, Fifth Circuit.

July 31, 1972.

Elizabeth R. Rindskopf, Howard Moore, Jr., Atlanta, Ga., Jack Greenberg, William L. Robinson, Sanford D. Bishop, Jr., New York City, for plaintiff-appellant.

Troy R. Millikan, Warren Fortson, Lenwood A. Jackson, Atlanta, Ga., for defendants-appellees.

Before WISDOM and INGRAHAM, Circuit Judges, and BOOTLE, District Judge.

BOOTLE, District Judge:

Plaintiff-appellant Barbara Jinks appeals from the lower court summary judgment which denied her back pay and omitted attorneys' fees, following the successful prosecution of her class action against the policy of the defendant school system which denied maternity leave with its attendant benefits to non-tenured teachers. The lower court, D. C., 332 F.Supp. 254, held the denial of maternity leave to this class of teachers to be contrary to the equal protection clause of the Fourteenth Amendment and enjoined defendants from denying maternity leave to plaintiff and the class she represents and ordered that plaintiff be rehired "should she choose to resume teaching, ON CONDITION that there is at such time a vacancy within the school system." Plaintiff failed to allege or show that she ever made any attempt to return to the school system following the birth of her child. Accordingly, stating that it would be mere speculation as to whether she would have been rehired had she applied, the district court denied back pay. The court failed to rule specifically on the request for attorneys' fees. We affirm the denial of back pay and remand so that the district court can rule on the request for attorneys' fees.

No challenge is made to the district court's ruling that the maternity leave policy of defendants was unconstitutional. The only questions for decision are whether the court should have awarded back pay and attorneys' fees.

## BACK PAY

On May 28, 1970, plaintiff, a teacher with three years longevity in the Atlanta School System, accepted the offer of a teaching contract for the forthcoming school year as a probationary or non-tenured teacher. At this time plaintiff was some five months pregnant. Plaintiff admits that as early as February 12, 1970, she was convinced that she was pregnant and that in March of 1970, she was advised by her doctor that she was pregnant. Two months after signing said contract and on July 22, 1970, plaintiff initiated this class action to compel the Board of Education to grant her and other non-tenured teachers maternity leave and sought attorneys' fees, and prospectively, an award for back pay. Plaintiff did not, prior to instituting this suit, comply with the applicable regulations governing departure from the school system because of pregnancy; nor in any manner give notice of her pregnancy to defendants.[1] It was

---

[1]. Regulation No. 6H11f of the Board provides: "Although non-tenured teachers are not eligible for maternity leave they shall comply with the requirements of the policy on maternity." In this regard it should be pointed out that non-tenured teachers who are rehired following resignation for maternity reasons do receive privileges not accorded new teachers hired for the first time, that is, "their applications for re-employment will be given very careful consideration. Probationary

July 24, 1970, two days after this law suit was commenced, that plaintiff, through her attorney, wrote to Mr. Chandler, plaintiff's principal, and stated that "Mrs. Jinks will not be returning to teach this August. She is pregnant and is expecting to deliver her child in October." The letter indicated also that a law suit had been commenced in federal court to compel the Board of Education to grant plaintiff and other non-tenured teachers maternity leave and stated that plaintiff "looks forward to rejoining you after the birth of her child."

On July 28, 1970, defendant, John Letson, Superintendent of Schools, replied to this letter, stating:

"Since as a probationary teacher Mrs. Barbara Jinks is not eligible for maternity leave, her employment will be listed as 'resigned' and so reported to the Board of Education. If following the delivery of her child, Mrs. Jinks wishes to return to a teaching position in the Atlanta Schools, she should contact the personnel office and request re-employment. Her request will be given consideration in terms of the needs of the system at that time."

Under the rules and regulations of the school system, a teacher on maternity leave is guaranteed the right to return to a teaching position following the birth of her child. However, she may return only when a position for which she is qualified becomes available in the system. There is no guarantee that she can return to the same position which she held prior to going on maternity leave. The teacher may return within three months following the birth of her child or may wait for up to three years before returning. The leave is without pay. In contrast, non-tenured teachers are not eligible for maternity leave and must resign from their position when it becomes necessary to leave due to pregnancy. No guaranteed right to return to the system exists. But, if the services of the non-tenured teacher have been satisfactory she can re-apply for employment and be accepted for openings in the system for which she is qualified.

It should be pointed out that the status to which plaintiff aspired carried with it certain obligations. First, one seeking maternity leave must give the requisite pre-departure notice as soon as pregnancy has been validated by a physician. Plaintiff did not comply with this regulation, although her pregnancy had been validated by her physician in March, 1970, two months prior to her signing the teaching contract for the forthcoming year. Second, following the birth of her child a teacher on maternity leave must make application "to return to teaching" and this application "shall be made at least two months before the teacher returns, and must include a physician's certificate showing the actual date of birth." Board Reg. No. 6H11e. Plaintiff also failed to make application to "return to teaching." Plaintiff even failed to comply with the procedures required of non-tenured teachers, i. e., make application for re-employment.

Not only did plaintiff fail to comply with the School System Regulations governing departure from and return to the system by both tenured and non-tenured teachers, she also failed to provide defendants by any means with a date certain on which she wished to resume teaching in the system. As recognized by the district judge, she simply made no attempt to return. Defendants, thus, never had an opportunity either to re-employ plaintiff or to decline re-employment. While we think it is clear that plaintiff desired and intended to return to the school system and that defend-

teachers re-elected . . . are granted years of service and previous status enjoyed at time of resignation." Such being the case it would not seem at all unreasonable to expect and require non-tenured

teachers resigning for maternity reasons, particularly those expecting to return, to comply with regulations governing departure from the system.

ants were fully apprised of this fact, in considering the propriety of the district court's ruling denying back pay, the question narrows to whether plaintiff, as a non-tenured teacher who was initially denied maternity leave, must in order to be entitled to back pay make an attempt to return to the school system and thereby afford the school system an opportunity either (1) to change its policy and grant the requested privileges, i. e., the right, rather than the possibility, of reinstatement, or (2) deny the request, thereby establishing a date from which rights and obligations of the respective parties can be determined. The district court in this regard stated in its Order of November 3, 1971 that:

"Although her complaint prayed for back pay in the event the court determined she was entitled to maternity leave, plaintiff did not allege in the complaint or in any of her responsive (sic) pleadings that she attempted to return to the school system after the birth of her child and defendants refused to rehire her. It would be mere speculation at this point whether defendants would have rehired her had she applied, even if there were positions open for which she was qualified."

In Harkless v. Sweeny Independent School District, 427 F.2d 319, 324 (5 Cir. 1971), we stated that:

"The prayer for back pay is not a claim for damages, but is an integral part of the equitable remedy of injunctive reinstatement. Reinstatement involves a return of the plaintiffs to the positions they held before the alleged unconstitutional failure to renew their contracts. An inextricable part of the restoration to prior status is the payment of back wages *properly* owing to the plaintiffs . . . . Back pay is merely an element of the equitable remedy of reinstatement." (Emphasis added).

■ But, back wages are not to be automatically granted whenever a person is ordered reinstated. The wages sought must be "properly owing to the plaintiffs." This requires positive proof that plaintiff was ordinarily entitled to the wages in question and, being without fault, would have received them in the ordinary course of things but for the inequitable conduct of the party from whom the wages are claimed.

■ Although defendants were ordered to re-employ plaintiff should she choose to resume teaching, we, as did the court below, believe that under the circumstances existing here, an award of back pay would not be appropriate.

Teachers granted maternity leave received no pay while on leave. Had plaintiff been granted leave in July of 1970 she would not have received pay. Further, she would not have been placed on a pay status until such time as she obtained reinstatement pursuant to the applicable regulations governing maternity leave. This required that plaintiff notify the personnel office of her desire to return two months before the date she desired to resume teaching and furnish a doctor's certificate showing the date of the birth of her child. The problem is that plaintiff did not so notify the personnel office or anyone else that she was then and there ready to return, either in conformity with the regulations or in any other manner. Plaintiff, in fact, never stated to the Board, in effect, "I am now ready to return and expect to be reinstated." Therefore, since plaintiff never requested either re-employment or reinstatement following the birth of her child, the defendants never refused either to rehire or reinstate her. It cannot be disputed that plaintiff, in July of 1970, served notice on defendants of her intent to return to teaching following childbirth. Various activities of the parties regarding this law suit served to impart continuing knowledge to defendants that plaintiff's intent remained constant. Plaintiff urges that this is sufficient notice to defendants to justify awarding back pay. We do not agree. More is required. Even

more is required of tenured teachers than merely possessing the intent to return. Implicit in the very concept of maternity leave is the fact that teachers enjoying such leave intend to return. But they must take positive steps to convert intent into accomplishment, that is, they must make an "application to return." We do not overlook the fact that defendants considered that plaintiff had resigned for reasons of maternity. Nevertheless, plaintiff should have made an attempt to return. Only plaintiff herself knew when she desired to return or even when she considered herself physically and emotionally ready to return.

If, following the birth of her child, plaintiff had simply made an effort to return by notifying defendants in some manner that she was then available for reinstatement, defendants would have had the opportunity to reevaluate their policy *pendente lite* in light of current events and to reassess their personnel requirements at that time. Such reevaluation and reassessment conceivably might have resulted in action being taken which would have removed the element of lost pay from this law suit. At a minimum, such action by plaintiff would have fixed a date which could be pointed to as the date of the "wrong" from which the parties' respective rights and obligations could be measured.[2]

Should we assume that defendants would have refused plaintiff the privileges accorded tenured teachers on maternity leave had she properly applied for re-employment, plaintiff's lack of diligence in making proper application leaves to speculation the date she would have been chosen to return to teaching. Defendants' regulations allow a teacher on maternity leave to return three months after the birth of her child, but she may wait for up to three years before having to return. Under the circumstances of this case this court will not approve plaintiff's suggestion that the pivotal date for determining a back pay award is three months after the birth of her child.

The remedy of reinstatement, being equitable in nature and origin, is not immune from the equitable maxims generally applicable to equitable actions. One such maxim is that "equity aids the vigilant." 30 C.J.S. Equity § 100. We believe that plaintiff was certainly less than vigilant in protecting her rights by not making a timely demand for reinstatement at such time as she was eligible and desired to return. Had plaintiff been more diligent we would not have to speculate as to whether or when defendants would have rehired plaintiff had she applied.

This case does not involve blatant discrimination by public officials to deprive a citizen or class of citizens of their constitutional rights. The record is devoid of any evidence of bad faith or unlawful motive on the part of defendants. They were faced with the responsibility of administering a large school system. Needful rules and regulations had to be adopted. In this day and age public agencies adopt, sometimes in the utmost good faith, regulations which are considered necessary and in the best interest of the program which they administer, little realizing that at some later date the courts, with the advantage of hindsight, will declare their handiwork violative of the equal protection clause of the Fourteenth Amendment. In the past several years legal thought regarding laws and regulations affecting individual rights and liberties have changed rapidly; that which was permissible a few years ago is no longer acceptable;

2. Plaintiff filed her complaint in July of 1970 at which time she was not eligible for back pay. She prayed for "back pay if, at any time after she becomes eligible for rehiring three months following the birth of her child, defendants *should fail to grant her a position as a teacher as such position becomes available.*" (Emphasis added). Construing her prayer in light of what transpired it is obvious that defendants never "fail(ed) to grant her a position as a teacher." They were never given the opportunity to do so. Even though plaintiff was not on maternity leave, had she made application, the needs of the system may have been such that plaintiff would have been re-employed regardless of her status.

**1228**

the Bill of Rights has indeed become a living Bill of Rights. This fluid situation makes it inevitable that governmental bodies will sometimes run afoul of modern constitutional requirements. When this occurs, assuming the absence of bad faith and discriminatory purpose, full justice can usually be accomplished through the application of time tested legal and equitable remedies without resorting to drastic prophylactic measures designed as much to deter future conduct by the defendants and others as simply to right the wrong which befell a particular plaintiff.

## ATTORNEYS' FEES

Although plaintiff's complaint included a prayer for attorneys' fees, there is a total void in the record as to that issue until this appeal. The district court's summary judgment order and summary judgment discussed and ruled upon the question of back pay but omitted even mentioning attorneys' fees. Following this order and judgment plaintiff filed a motion to Alter, Amend or Reconsider the Summary Judgment Order and Judgment and this motion was likewise silent as to attorneys' fees. The motion was overruled by the district court in its order of November 3, 1971, which order again omitted any reference to attorneys' fees. On this appeal plaintiff complains that attorneys' fees were not allowed.

Federal district courts may, in their discretion, award attorneys' fees in civil rights litigation where the actions of the defendants were "unreasonable and obdurately obstinate". Horton v. Lawrence County Board of Education, 449 F.2d 793 (5th Cir. 1971); Lee v. Southern Home Sites Corp., 429 F.2d 290 (5th Cir. 1970) and Williams v. Kimbrough, 415 F.2d 874 (5th Cir. 1969). Since the District Judge never ruled on plaintiff's demand for attorneys' fee and since this court is not empowered to make an initial adjudication on such a claim, we remand this issue to the district court for its determination without the slightest intimation as to what his decision should be. This is the pro-

cedure we followed in *Horton, supra.* The allowance of such fees is within the discretion of the district court and its exercise of this discretion will not be upset on appeal in the absence of clear abuse. But, it is impossible for this court to review the soundness of such an exercise of discretion "unless the trial court indicates in its findings of fact the grounds upon which it exercised its discretion, as the trial court did in Williams v. Kimbrough, *supra*." *Lee, supra,* 429 F.2d at 296.

Accordingly, we affirm the district court's denial of back pay, but remand on the issue of attorneys' fees for the trial court to make an initial adjudication as to whether or not plaintiff should be awarded attorneys' fees for the successful prosecution of the class action only.

Affirmed in part, and remanded in part with directions.