Kenneth T. **RAINEY**, Plaintiff-
Appellant,

v.

**JACKSON STATE COLLEGE et al.,**
Defendants-Appellees.

No. 72–1681.

United States Court of Appeals,
Fifth Circuit.

June 27, 1973.

A. Spencer Gilbert, III, Jackson, Miss.,
for plaintiff-appellant.

William A. Allain, Asst. Atty. Gen., Jackson, Miss., M. M. Roberts, Hattiesburg, Miss., Ed Davis Noble, Jr., Jackson, Miss., for defendants-appellees.

Before BELL and THORNBERRY, Circuit Judges and GROOMS, District Judge.

BELL, Circuit Judge:

The events giving rise to this appeal are unusual indeed. The Gordian-like knots are largely procedural.

The matter began as a suit under the civil rights jurisdiction of the district court, 42 U.S.C.A. § 1983, and 28 U.S.C.A. § 1343(3). Plaintiff alleged that his contract to teach at Jackson State College during the academic year 1970–71 had been breached by defendants [1] in violation of his First Amendment right to free speech. On September 16, 1970, the district court dismissed for lack of jurisdiction. On September 21, 1970, a panel of this court granted plaintiff's motion for injunction pending appeal with direction that he be reinstated to his teaching post. Defendants assigned him to a research position rather than to his teaching post. On September 28, 1970, the order of this court was clarified to require that plaintiff be reinstated to the teaching duties as were contemplated by the contract.

The appeal was then heard on the merits in this court and the judgment of the district court was reversed. We held that the district court had jurisdiction and should proceed to hear the cause. Rainey v. Jackson State College, 5 Cir., 1970, 435 F.2d 1031. The statement of facts therein set out will suffice for this appeal. The following part of our opinion has some bearing on the subsequent result:

"Upon remand we leave in force this Court's injunction granted September 21, 1970, and clarified September 28, 1970. The injunction will remain in full force and effect until such time as the plaintiff has had an opportunity to apply to the district court for injunctive relief pending a decision of the case on the merits, and the district court's disposition of such motion." 435 F.2d at 1036.

Our decision was rendered on December 22, 1970. Our mandate issued on January 13, 1971. Plaintiff moved for a preliminary injunction on February 24, 1971, but no further action was taken in the district court during the 1970–71 academic year. The reason for the inaction does not appear in the record but the result is clear and undisputed. Plaintiff taught throughout the contractual year. He thus prevailed on the merits although there was never a hearing on the merits of his claim. This would have ended the matter for all practical purposes except as to the prayer for attorneys' fees and costs. But there is more.

The contractual period in suit terminated on May 31, 1971. On August 26, 1971, plaintiff amended his complaint to claim a non-contractual right to teach during the summer session of 1971 and the 1971–72 academic year. His amendment seemed to rest on the assumption that an in futuro—in perpetuity form of tenure flowed from the denial of his First Amendment rights in connection with the one year teaching contract. This time he sought compensatory and punitive damages but no injunctive relief.

The amendment, as a single cause of action, made reference to the refusal to employ plaintiff to teach during the summer session of 1971, and also during the 1971–72 academic year. The district court bifurcated this cause of action into two parts (the summer session and the 1971–72 year), in submitting special interrogatories to the jury. In denying a motion for new trial, the district court treated these periods as one. This is substantially the approach

---

1. The defendants are Jackson State College, its president, the members of the Mississippi Board of Trustees of State Institutions of Higher Learning, and the Board's Executive Secretary.

the plaintiff has taken in his brief in this court. In the view we take of the evidence and of the case, the parts will be considered as one—denominated the 1971–72 claim.

Plaintiff requested a jury trial and the matter was tried to a jury in January 1972. The claims for each year (and the summer session), were submitted to the jury on special interrogatories and each was rejected. The district court then denied a motion for judgment notwithstanding the verdict and this appeal followed.

Plaintiff now contends that he was entitled to a judgment notwithstanding the verdict on his claims as to each of the years in question as well as attorneys' fees and costs. We must, of course, take the record as made by the parties together with the procedures adopted by them as the basis for our decision. The purpose of the trial of the claim for 1970–71 is a mystery. It was essentially moot. We have carefully examined the prayers contained in the complaint and except for attorneys' fees, ordinarily for resolution by the court, they have been entirely satisfied prior to trial. Were it not for the claim for attorneys' fees, we might conclude our discussion of this particular claim on the note that "all's well that ends well". The issue of attorneys' fees is outstanding, however, and we can resolve it on the basis of the trial record as to the 1970–71 claim.

In any event, there are three issues involved: first, the claim for 1970–71; second, the claim for 1971–72; and third, attorneys' fees for plaintiff's counsel in connection with each of the claims. We see the motion for judgment notwithstanding the verdict as separable to the extent that we may consider each of these issues as standing alone. We turn then to the issues.

## I.

We begin with the claim for 1970–71. It was mooted by the relief obtained by plaintiff through the injunction pending appeal granted in this court coupled with the subsequent inaction in the district court. Nevertheless, because of the claim for attorneys' fees in connection with this particular claim, we must proceed to the merits and therefore to the motion for judgment notwithstanding the verdict.[2]

The record discloses without dispute that plaintiff's contract was withdrawn or breached due solely to the discovery in August 1970 by one of the defendant trustees that plaintiff, while teaching at another institution during the previous year, had testified as an expert witness for the defense in a criminal case charging the obscenity of a film. The defense was successful. Plaintiff received widespread publicity due to his appearance as a witness and was denied tenure although not his teaching position at the private institution on account of the event. The trustee brought these facts to the attention of his fellow trustees. They, in turn, caused the president of Jackson State to withdraw plaintiff's contract. This appears from the testimony of the trustee who made the discovery.

At this point, the trustees took the position that the president had no authority to make the contract without their final approval. This meeting of the trustees was in August.

The president then advised plaintiff that his secretary had sent the contract to him during the preceding spring through inadvertence. This was in the face of the fact that other faculty contracts had been sent out during the spring. The essence of defendants' position was that any contract could be withdrawn or cancelled at the pleasure of the trustees at any time prior to the

2. The issue of attorneys' fees was submitted to the jury as a part of the claim for each of the years in question. It followed from the finding by the jury for defendants on the claims presented that no attorneys' fees were awarded.

beginning of school in September. There was no indication whatever in plaintiff's contract that it was not final but the by-laws of the Board of Trustees and the faculty handbook reserved the right in the Board to disapprove contracts.

The president and trustees also adopted the pretext of saying to plaintiff that his position, along with three others, had been eliminated in order that the security force could be increased at the college. At any rate, these reasons all gave way when the trustee testified on deposition and at trial that testimony at the obscenity trial and the resulting publicity was the reason for withdrawing the contract. The lack of a defense on the part of defendants becomes all the more apparent from a reading of the five pertinent documents which are appended hereto.

These facts make out what appear to us to be a clear case of impermissibly freighting plaintiff's contract with a deprivation of the First Amendment right to free speech. The following statement of the Supreme Court in Perry v. Sindermann, 1972, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570, is apt:

"For at least a quarter century, this Court has made clear that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not act. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to 'produce a result which [it] could not command directly.' Speiser v. Randall, 357 U.S. 513, 526, [78 S.Ct. 1332, 1342] 2 L.Ed.2d 1460, [1473]. Such interference with constitutional rights is impermissible." 408 U.S. at 597, 92 S.Ct. at 2697, 33 L.Ed.2d at 577.

Cf. Shelton v. Tucker, 1960, 364 U.S. 479, 485–486, 81 S.Ct. 247, 5 L.Ed.2d 231; Keyishian v. Board of Regents, 1967, 385 U.S. 589, 605–606, 87 S.Ct. 675, 17 L.Ed.2d 629. This teaching is all the more applicable in a case such as this where a contract is breached because of the exercise of First Amendment rights.

Despite this conclusion, it is the case that the 1970–71 claim was moot. However, the claim for attorneys' fees remained viable and should have been presented to the court. In an effort to work out of the procedural morass which the parties have created, we conclude that plaintiff, absent the question of mootness and for the purpose of the attorneys' fees question only, was entitled to a judgment n.o.v. on the 1970–71 claim. Thus the claim for attorneys' fees in connection with that claim is preserved and we next consider whether attorneys' fees were due.

II.

As to when attorneys' fees may be awarded in § 1983 civil rights suits, we have said:

"Federal district courts may, in their discretion, award attorneys' fees in civil rights litigation where the actions of the defendants were 'unreasonable and obdurately obstinate'." Jinks v. Mays, 5 Cir., 1972, 464 F.2d 1223, 1228.

See also Horton v. Lawrence County Board of Education, 5 Cir., 1971, 449 F.2d 793; Lee v. Southern Home Sites Corp., 5 Cir., 1970, 429 F.2d 290; Williams v. Kimbrough, 5 Cir., 1969, 415 F.2d 874.

■ We hold that the record makes out a case of unreasonable and obdurate obstinacy on the part of defendants through the proceedings in this court which culminated in our prior opinion, 435 F.2d 1031, supra. As will be seen, we hold that the proceedings thereafter

were no more than run of mine litigation and defendants were in no wise obstinate in defending the moot claim or the claim for 1971–72 which was added by amendment.

▉ The proceedings in which we find the prohibited obstinacy on the part of defendants began with the original suit. The contract was breached. Plaintiff sought a conference with or a hearing before the trustees. He was refused except at the next regular meeting which would be after school began. He then filed suit. The defense was that the First Amendment claim was of such little consequence as to leave the matter as nothing more than a common law breach of contract suit for the state courts. The district court agreed. This court disagreed and accorded the rather drastic relief of granting an injunction pending appeal.[3] Defendants promptly violated the order of this court by assigning plaintiff to research instead of the contractual teaching position. It was then necessary to seek an additional order in this court which was granted. Plaintiff then prevailed in this court on the jurisdictional question and the case was sent back to the district court for further proceedings in due course.

Thereafter, plaintiff sought a preliminary injunction in the district court. No action was taken on the motion. The order of this court remained in effect and plaintiff taught through the year 1970–71. We conclude that the obstinacy ended at this point. Plaintiff thereafter amended his complaint to seek damages for the next year, a claim to be hereinafter discussed. He filed no objection to trying the moot issue presented by the 1970–71 claim.

▉ There is one obstacle to an award of attorneys' fees to plaintiff

which must be considered. Shortly after prevailing in this court in Rainey v. Jackson State College, 435 F.2d 1031, supra, plaintiff submitted a bill of costs, including an amount for attorneys' fees, to this court. The costs were allowed but the claim for attorneys' fees was disallowed. This rejection of the claim was on the record as it stood at that time. The only question before the court was jurisdiction. There had been no resolution of the merits of the claim. There had been no occasion to consider whether defendants had been obdurately obstinate in their dealings relating to the 1970–71 contract. We hold that the rejection of attorneys' fees at that time was not on the merits and that the rejection is no bar to an award of fees on the merits of the claim.

We leave the amount of the fee to be awarded for the district court on remand. Cf. Jinks v. Mays, supra, 464 F.2d at 1228. Upon remand, we hold that a fee should be allowed for this appeal but only on the basis of one-half of the services rendered in the total appeal.

### III.

This leaves the question of the 1971–72 claim. Plaintiff requested a jury trial and lost. The question presented is whether there was sufficient evidence to warrant submission of the question to the jury. Boeing v. Shipman, 5 Cir., 1969, 411 F.2d 365. Under Perry v. Sindermann, supra, defendants could have declined to award plaintiff a contract to teach in 1971–72 for no reason or for any reason except a constitutionally impermissible reason. Plaintiff recognizes that he had no contract and no tenure. His position is that he might have obtained a new contract but for defendants' attitude toward his prior

---

3. To warrant an injunction pending appeal, it must appear that there is " . . . great likelihood, approaching near certainty, that [applicant] will prevail when his case finally comes to be heard on the merits, . . . ". Greene v. Fair, 5 Cir., 1963, 314 F.2d 200 at 202. See also McKenzie v. Schuppener, 5 Cir., 1969, 415 F.2d 1056, 1058; Benoit v. Gardner, 1 Cir., 1965, 345 F.2d 792, 793; Ogden v. Department of Transportation, 6 Cir., 1970, 430 F.2d 660, 661.

First Amendment activity as a witness in the obscenity trial. Thus we have a classic case of a non-tenured teacher acquiring a right to teach in futuro and in perpetuity unless the college can present cause for non-renewal of such substantiality as will overcome the inference that the non-renewal was for the prior impermissible conduct.

■ The taint of the 1970–71 activity of defendants carried forward to 1971–72 by inference and was, without more, sufficient to make out a prima facie case. The burden was then on defendants to overcome this case. They sought to do so by offering evidence on which the jury could have found that plaintiff was not offered a new contract for the reason that his principal training was in religious philosophy rather than in English. Plaintiff was an ordained minister and taught in the English department. He had a master's degree in English but thereafter earned a doctorate in religious philosophy. The jury could have also concluded that his credentials as an English teacher were not of a needed type. This evidence applied alike to the claims to teach at the summer session of 1971, and during the 1971–72 academic year. These reasons had to be weighed against the undisputed First Amendment violation and the further unspoken premise that the defendants would have a natural inclination to rid the school of one who had sued them. The weighing was for the jury. We cannot say that the reasons offered by the defendants could be disregarded as a matter of law. The jury found for the defendants and the matter ends there.

Fifty per cent of the statutory costs incurred in the trial and on this appeal are to be assessed against plaintiff and fifty per cent against defendants.

Affirmed in part; reversed in part; remanded with direction.

## APPENDIX 1

### JACKSON STATE COLLEGE
Jackson, Mississippi 39217
Office of the President
April 1, 1970

Dr. Kenneth Tyler Rainey
Route 1, Box 165–D
Clinton, Mississippi 39056

Dear Dr. Rainey:

Upon the recommendation of Dr. Wilbert Greenfield, Dean of Instruction, we are happy to offer you employment on our faculty for the 1970–71 school year.

Enclosed is a contract for your services as an Assistant Professor of English at a salary of $11,160 for nine months, September 1, 1970 through May 31, 1971. Please indicate your acceptance of this offer by signing and returning the enclosed contract to my office along with the other enclosed forms on or before April 22, 1970. The information sheet regarding the 1970–71 academic year will be sent to you at a later date.

Please contact Dr. Greenfield concerning your teaching assignments and other details about the College. We look forward to your joining our faculty in September.

Sincerely yours,
/s/ JOHN A. PEOPLES, JR.
John A. Peoples, Jr.,
President

JAP:nhw
Enclosures
Copy to Dr. Wilbert Greenfield

## APPENDIX 2

### CONTRACT

STATE OF MISSISSIPPI:
CITY OF JACKSON:
COUNTY OF HINDS:

This contract made and entered into by and between the Board of Trustees of

Institutions of Higher Learning of the State of Mississippi hereinafter called the party of the first part, and Dr. Kenneth Tyler Rainey hereinafter called party of the second part, witnesseth:

That the party of the first part under and by virtue of the authority vested in it by Section 6724, Mississippi Code of 1942, does hereby contract with and employ Dr. Kenneth Tyler Rainey as Assistant Professor of English at Jackson State College for the period beginning September 1, 1970, and ending on May 31, 1971, at and for the sum of $11,160, payable in 9 monthly installments at the close of the months of September through May, inclusive

Provided that the party of the first part reserves the right to increase or decrease said monthly salary at any time during the life of this contract; said decrease shall be made only when and if necessary to keep the expenditures of the institution herein mentioned within that part of the Legislative appropriation allotted to said institution for the period covered by this contract and shall be effective only from and after the date of the passage of an order by the party of the first part, fixing the amount of the decrease and making it applicable to all outstanding contracts for institution mentioned above on an equal basis.

Provided further that in event the party of the second part abrogates this contract for his convenience, the party of the first part shall then fix the time and conditions of termination.

Provided further that the party of the first part shall have the power and authority to terminate this contract at any time for malfeasance, inefficiency or contumacious conduct by the party of the second part.

The party of the second part does hereby accept the employment herein above specified upon the terms and conditions herein stated.

In witness whereof, we have hereunto set our hands and seals in triplicate on this the 1st day of April, 1970.

BOARD OF TRUSTEES OF STATE INSTITUTIONS OF HIGHER LEARNING.
/s/ John A. Peoples, Jr.
for the Executive Secretary
Party of the First Part
/s/ KENNETH T. RAINEY
Party of the Second Part
4/13/70

APPROVED:
/s/ JOHN A. PEOPLES, JR.
John A. Peoples, Jr.
Chancellor or President.

---

## APPENDIX 3

### JACKSON STATE COLLEGE
Jackson, Mississippi
May, 1970

### INFORMATION TO FACULTY AND STAFF

Enclosed is a copy of your contract for your file. Please note that the teaching faculty is usually contracted for a nine-month academic year of three-quarters. Some persons, however, are contracted for eleven months. Persons who have nine-month contracts will receive their salaries in nine equal monthly installments. Persons who have eleven-month or twelve-month contracts will receive their salaries in twelve equal monthly installments.

Eleven and/or twelve-month faculty, chief administrative officers, and department heads who are employed under annual contract will be granted a month's annual vacation. Directors, assistant directors, managers, coordinators, and other supervisory personnel who are employed under an annual contract will be granted a vacation leave of three weeks (21 consecutive days). All other salaried personnel employed on a contract basis, including clerical and secretarial personnel who hold permanent status will, after completing one fiscal year (July 1, 1970 to June 30, 1971), accrue vacation leave at the rate of two weeks (14 consecutive days) during

their first five years of continuous employment. This rate will increase to three weeks (21 consecutive days) after five years of satisfactory and continuous service with the College.

Deductions will be made from your salary under this contract for Federal Income Tax, State Income Tax, Social Security, and Public Employees' Retirement System of Mississippi. Deductions may be made, upon request, for the Jackson State College Employees' Group Insurance Plan, and the Health Center Plan. Specific information as to the amounts of the deductions may be obtained from the Business Office of the College.

This contract is effective July 1 or September 1, 1970, as indicated on the contract. The teaching faculty, however, is not required to report for duty until Monday, September 14, 1970 at 9 a. m. unless there is further agreement. Persons not reporting for duty on that date will have salary deductions made for the time from the first of September until the date that they report for duty.

OFFICE OF THE PRESIDENT

APPENDIX 4

SCOPE
JACKSON STATE COLLEGE

Jackson, Mississippi

CAMPUS NEWS

VOLUME XIX          JULY 10, 1970

Number 16

The Scope is published 52 times a year by the Jackson State College Office of Public Relations

1877–1970—93 years of quality education

"The empty vessel makes the greatest sound"—Shakespeare

Faculty Facts

Jackson State College announces the addition of Kenneth Tyler Rainey to the college family as an instructor in the English Department.

Mr. Rainey is a native of the State of Tennessee where he received his early education. He earned the Bachelor of Arts Degree from Mississippi College in 1958 and the Master of Arts Degree from the University of Michigan in 1959. He holds the Bachelor of Divinity, 1964, and the Doctor of Theology, 1967, from the New Orleans Baptist Theological Seminary. He was a Woodrow Wilson Fellow, 1958–59.

The newcomer has a wide band of experiences which include work with the Pine Burr Area Council, Boy Scouts of America; assistant director of Youth Summer Activities, First Baptist Church, Gulfport, Mississippi; Assistant Pastor, First Baptist Church, Panama City, Florida; Pastor, Holmesville Baptist Church, McComb, Mississippi; instructor in English, Tulane University, New Orleans, Louisiana; tutor in English and Greek, New Orleans Baptist Theological Seminary; instructor in History and assistant professor in English, Mississippi College, Clinton, Mississippi; and interim pastorates at Gauter, Gulfport, Wesson, and Brookhaven, Mississippi.

Mr. Rainey is a member of Omicron Delta Kappa, men's leadership honor society; Sigma Tau Delta, professional English fraternity; Phi Alpha Theta, national honorary history fraternity, American Association of University Professors; South Atlantic Modern Language Association; Mississippi Council on Human Relations where he serves as member of the Board of Directors; and a member of the Northminister Baptist Church, Jackson, Mississippi.

Other activities of Mr. Rainey include the chairmanship of the Mississippi College Faculty Committee on Honorary Degrees; member, Mississippi College Faculty Committee on Graduate Fellowships and Scholarships, Publications Council; sponsor, Mississippi College Class of 1970; coordinator, Mississippi College Foreign Study-Travel Program;

and campus representative, Woodrow Wilson National Foundation.

Mr. Rainey is married to the former Miss Elaine Fitts of Pontotoc, Mississippi. They are the parents of three children.

---

APPENDIX 5

JACKSON STATE COLLEGE

Jackson, Mississippi 39217
Office of the President
August 20, 1970

Dr. Kenneth Tyler Rainey
Route 1, Box 165–D
Clinton, Mississippi 39056

Dear Dr. Rainey:

This is to inform you that the contract for your services as an Assistant Professor of English which was mailed to you on May 9, 1970, was sent inadvertently by my secretary who had affixed by rubber-stamped signature without permission. Moreover, your name had not been submitted to the Board of Trustees for approval which is a prerequisite to employment.

I regret to inform you that the position for which you were being considered has been eliminated by a budget amendment to provide necessary funds for increasing the Jackson State College Security Force. This amendment was approved by the Board of Trustees on August 20, 1970.

We shall be happy to offer our assistance in helping you to find other employment.

Sincerely yours,
/s/ JOHN A. PEOPLES, JR.
John A. Peoples, Jr.
President

JAP:frm
Copy: Dr. Wilbert Greenfield
Dr. Estus Smith
Dr. E. E. Thrash

THORNBERRY, Circuit Judge (concurring in part and dissenting in part):

The majority has discussed two time periods for which the plaintiff sought relief below, the 1970–71 nine-month academic term and the 1971–72 term. There is an additional third period in this case, however, which the majority does not discuss separately—the summer 1971 term. This summer session, as well as each of the two long terms, was covered by the complaint and was the subject of a separate interrogatory to the jury. The College contracted with teachers (or refused to do so) for each of the three periods separately. For these reasons and others which will appear below, I think the College's refusal to hire Dr. Rainey for the 1971 summer term should receive separate consideration on this appeal.

*1970–71 term.* I agree with the conclusion reached in part I of the majority opinion; the record shows conclusively that the defendants acted for constitutionally impermissible reasons in attempting to cancel, or deny the existence of Dr. Rainey's 1970–71 contract. One item of evidence bearing on the Board's 1970–71 decision was a transcript of a hearing accorded Dr. Rainey on January 8, 1972 in compliance with an order of the district court. At the hearing Dr. W. O. Stone, President of the Board, explained why the Board, acting on the recommendation of its Special Education Committee had decided on August 19 and 20, 1970 that the College should not employ Dr. Rainey in 1970–71. He stated:

Now, there were several reasons why the Board members questioned your [Dr. Rainey's] appointment. They are as follows: (1) There was much publicity about your statements concerning the motion picture entitled, "The Fox". The Board members expressed grave concern that the publicity centered around your testimony dealing with the motion picture, "The Fox", would be detrimental to your effectiveness as a professor at Jackson

State College. It was pointed out by Board members that you were quoted as saying that this motion picture was not immoral and was one of the most beautifully done films that you had seen.

\* \* \* \* \* \*

The second major concern of the Board members was the fact that your field of expertise is basically in religious philosophy and your appointment was recommended as an Assistant Professor in the field of English. It is somewhat unusual for an ordained minister to seek employment at a public institution of higher learning to teach English.

Dr. M. M. Roberts, who had been a member of the Special Education Committee, explained the basis of the Committee's decision in somewhat greater detail:

There were a good many reasons for what we thought. At that time there was no criticism of the right of Dr. Rainey to do what he had done in testifying about this moving picture entitled "The Fox". But, wide publicity had been given to this and so much so that the administrative head and the administrators of Mississippi College concluded that Dr. Rainey should not be given tenure at that institution because he, Dr. Rainey, had gotten this bad publicity. This publicity that showed him out like a sore thumb, I'd say. This individual who had publicity where the public mind was advised and he thus had been watered down or rather his publicity received had made it improper in the view of what the Board itself considered to be in the best interests of Jackson State College that he be employed as a faculty member at Jackson State College for the year 1970-71, for that academic year.

\* \* \* \* \* \*

Another area which was discussed and considered on August 19th and/or August 20, 1970, by the Committee and Board aforesaid, was the fact that Dr. Rainey was an ordained minister of the gospel and that in all probability he could and would not devote his full undivided time and attention to his duties as a professor at Jackson State College. And, further, that his field of training and experience and conduct and what he had done with his life was basically in the field of religious philosophy and he was seeking employment in the field of English as Assistant Professor of English at Jackson State College for the academic year of 1970-71.

Thus, the hearing transcript reflects a total of three grounds for the Board's decision: (1) Dr. Rainey's testimony for the defense at an obscenity trial and the resultant publicity, (2) concern that, since his academic credentials did not include a doctorate in English, he might not be qualified to teach English, and (3) concern that his activities as a minister might interfere with his activities as a teacher. Dr. Roberts and Mr. Hederman, another member of the Board of Trustees testified at trial that the first of these reasons was the "basic" one. Mr. Hederman stated:

The basic reason [for the Board's action] that was brought out at the time . . . was because of the publicity involved in The Fox trial, the thought was brought out that Dr. Rainey had testified in the Court hearing the film was viewed by him, according to the newspaper publicity, and the inference was that he could see nothing wrong with the film, and it was the general feeling of the members of that committee that day was, that we perhaps be served [sic] by not giving Dr. Rainey a contract, because of the publicity and because of his standards if he expressed this feeling at the Court trial.

Together, the transcript of the hearing and the testimony at trial make clear, as defendants admit in their brief on this appeal, that the plaintiff's testimony at the obscenity trial and that "the notoriety which he had obtained from his testi-

mony" constituted the paramount basis"[1] for the Board's action.[2] I fully agree with the majority that the testimony and the resultant publicity were impermissible reasons under Perry v. Sindermann, 1972, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570, for the Board's attempt to terminate Dr. Rainey's employment in 1970–71 and that the district court should have granted judgment n. o. v. for the plaintiff for this period. *Cf.* Bazaar v. Fortune, 5th Cir. 1973, 476 F.2d 570, 579 n. 17 and accompanying text, rehearing *en banc* granted May 9, 1973.

*1971 summer term.* Further, I agree with the majority that "[t]he taint of the 1970–71 activity of defendants carried forward to 1971–72 by inference and was, without more, sufficient to make out a prima facie case." The triers of fact could not reasonably ignore such recent history, so clearly painted, of adverse Board action toward Dr. Rainey based on constitutionally impermissible grounds. Necessarily, the inference applied also to the decision regarding employment for the 1971 summer term, and on the facts of this case the inference was of such strength that it would require a directed verdict or a judgment n. o. v. for plaintiff.

Rather than rebutting plaintiff's case below by attempting to show it had acted for permissible reasons, the Board attempted to sidestep it by demonstrating that the Board normally does not, and did not in this case, actually make the

hiring decision for the summer term, but delegated this responsibility to the President of the College, Dr. Peoples. It is clear from the record, however, that the Board did in fact play a decisive role in making the summer 1971 decision. Normally, the hiring decisions for the summer term were not made until May, so that the College could hire according to the number of students who enrolled. Deviating from this usual timing, Dr. Peoples wrote Dr. Rainey over two months before May, on February 24, 1971, that he would not be employed by the College for the summer 1971 term or for the 1971–72 long term. This letter was written shortly after Dr. Rainey had requested a position for the summer and after Dr. Peoples had conferred with a Board member concerning the appropriate response. The strong influence of the Board on the contents of the letter is seen clearly in the fact that the *1971–72 hiring decision, which only the Board could make* was announced in the same letter with the 1971 summer session decision. The Board effectively made the 1971 summer term decision despite its formal delegation of hiring authority to Dr. Peoples. The evidence contains no hint that its reasons were different from the impermissible ones which underlay the 1970–71 decision.

Even if Dr. Peoples' reasons are considered distinct from those of the Board, the result is the same. Dr. Peoples at all times admitted Dr. Rainey's classroom competency and did not purport to

1. The quoted language is from appellee's Brief at 13.

2. The majority opinion treats the 1970–71 decision as resting *exclusively* on constitutionally impermissible grounds and the 1971–72 decision as resting *exclusively* on permissible grounds. Likewise, the district court, in propounding interrogatories to the jury, asked whether the Board's decision was based "solely" on impermissible grounds or on *no* impermissible grounds. This sole-reason approach is unrealistic. Human conduct and decisions most frequently rest on multiple grounds, as the disputed Board action apparently did in this case. We should inquire not

whether *the* ground for the Board's action was a proper or an improper one, but whether *an* improper ground was "even partially" a cause of the action taken. *See* Fluker v. Alabama State Board of Education, 5th Cir. 1971, 441 F.2d 201. Even if permissible reasons played a part in causing a certain action, if the action would not have been taken but for reliance on an additional impermissible ground, it should be held to be sufficiently based on a reason "upon which the government may not rely," Perry v. Sindermann, 1972, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570, to support a § 1983 action.

rely on insufficient demand as a reason not to hire him for the 1971 summer session. Rather he referred to plaintiff's opposition to the College administration in the context of his court battle over the 1970–71 term and the adverse effect which the sympathy and support of some teachers for Dr. Rainey's position had on smooth administration. These difficulties had caused no disruption, but had taken the form of discussion. *Cf.* Tinker v. Des Moines Independent School District, 1969, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731. Such disagreements between teachers and the school administration regarding the Board's reaction to Dr. Rainey's exercise of his First Amendment rights surely can furnish no independent basis for justifying a refusal to hire. The defendants should not be allowed to rely on the existence of a problem which they themselves have created by clearly improper actions. On the record, I would hold that the district court should have granted judgment n. o. v. for the plaintiff with regard to the 1971 summer term, as well as the 1970–71 long term.

*1971–72 term.* I agree that the jury verdict for defendants regarding the third period is supported by the evidence, but I rely on different evidence than the majority. Unlike the majority, I can discover no evidence in the record which would indicate that the Board relied on reasons for the 1971–72 decision which differed from those for the 1970–71 decision.

Trial testimony did tend to indicate, however, that plaintiff never applied for a teaching position at Jackson State for the 1971–72 term and, in fact, would not have accepted one if offered. Plaintiff received a letter in February 1971 notifying him that the College would not offer him a contract for 1971–72. In December 1970, two months before the letter arrived, plaintiff had applied for admission to Ohio State University for graduate studies. In fact, he did attend Ohio State University in 1971–72 and received a fellowship for that purpose. No evidence in the record shows

that plaintiff applied to Jackson State for a position in 1971–72 or expressed a desire for one. If the plaintiff, as the jury could reasonably find, was unwilling to accept a position at Jackson State in 1971–72, he was properly denied judgment for that period. Unless he took the necessary steps to apply for the job and was prepared to accept it, he suffered no wrong when the College failed to give it to him and is entitled to no remedy under 42 U.S.C.A. § 1983.

*Attorney's fees.* On the attorney's fees issue, I agree with the majority that this court's rejection of Dr. Rainey's attorney's fees claim on the original appeal, which concerned jurisdiction, does not bar an attorney's fees award. I would remand for a determination by the district court in the first instance of the question whether defendants have been "unreasonable and obdurately obstinate," Jinks v. Mays, 5th Cir. 1972, 464 F.2d 1223, 1228, and if so, when the obstinacy abated, if it did abate. This was the procedure followed in Jinks v. Mays and in Horton v. Lawrence County Board of Education, 5th Cir. 1971, 449 F.2d 793.