Kenneth T. RAINEY, Plaintiff-Appellant
Cross Appellee,

v.

JACKSON STATE COLLEGE. et al., etc.,
Defendants-Appellees Cross Appellants.

No. 74–2621.

United States Court of Appeals,
Fifth Circuit.

May 2, 1977.

A. Spencer Gilbert, III, Barry H. Powell, Jackson, Miss., for Kenneth T. Rainey.

A. F. Summer, Atty. Gen., Ed Davis Noble, Jr., William A. Allain, Asst. Attys. Gen., Jackson, Miss., M. M. Roberts, Hattiesburg, Miss., for Jackson State College et al.

Before COLEMAN, GODBOLD and HILL, Circuit Judges.

GODBOLD, Circuit Judge:

This appeal is an outgrowth of our earlier decisions in *Rainey v. Jackson State College,* 435 F.2d 1031 (CA5 1970) (*"Rainey I"*) and *Rainey v. Jackson State College,* 481 F.2d 347 (CA5 1973) (*"Rainey II"*). In *Rainey II* we held that plaintiff was entitled to an award of attorneys' fees and remanded the case to the district court for it to make an award. After an evidentiary hearing the district court awarded fees of $1,750. Plaintiff appeals on the ground that the award is inadequate and that the district court used incorrect standards in setting it. Defendants cross-appeal, contending that no attorneys' fees should be awarded. We agree with plaintiff, vacate the judgment of the district court, and remand the case with directions to enter a judgment awarding plaintiff attorneys' fees of $11,182.50.

It is necessary to set out the history of this prolonged litigation in order to understand why the district court award was inadequate. Plaintiff-appellant Rainey filed this suit in 1970, under 42 U.S.C. § 1983, alleging that his contract to teach at Jackson State College for the academic year 1970–71 had been terminated by the defendants[1] because of his exercise of his First Amendment right of free speech. Specifically, plaintiff alleged that he was dismissed because he had testified as an expert witness on behalf of persons under criminal charges of obscenity arising from exhibition of the motion picture "The Fox."

September 16, 1970, after a hearing, the district court dismissed Rainey's complaint for lack of subject matter jurisdiction. On September 18 plaintiff applied to this court for an injunction pending appeal, to prevent his dismissal pending a hearing before this court. The motion was granted September 21. The defendants did not reinstate Rainey to his teaching position but rather insisted that the order of this court only required that his salary be paid (also the college gave him the opportunity to do research). Plaintiff had to come back to this court for further relief, and on September 28, we entered another order requiring that he be reinstated to the type of teaching duties and responsibilities contemplated in his contract with Jackson State.

Rainey's appeal from the district court's dismissal order was heard by this court on November 18, 1970. Our opinion was handed down December 22, 1970. We held that the district court had erred in dismissing the suit and remanded the case for further proceedings. We left our injunction in effect until plaintiff could ask the district court for injunctive relief pending the trial in that court on the merits. *Rainey I,* 435 F.2d 1031 (CA5 1970).

After remand plaintiff moved in the district court for injunctive relief, but the record does not show that any action was

---

1. The college, the president, and the officers and members of the Board of Trustees of the Institutions of Higher Learning.

taken on the motion, with the result that Rainey continued to teach throughout the 1970–71 year (ending May 31, 1971) under the authority of the injunction which this court had issued. After the end of that academic year, Rainey amended his complaint to allege that he had been deprived of a non-contractual right to teach during the summer 1971 session and the 1971–72 academic year. The suit was tried on the merits of this amended complaint in January 1972. The jury returned special verdicts in favor of defendants with respect to both the 1970–71 academic year and the succeeding period. Thus, in effect, the jury held that Rainey had not been discharged in 1970 for exercise of his rights of free speech, nor had he been improperly denied employment for the summer of 1971 and the 1971–72 school year.

Plaintiff filed a motion in the district court asking that notwithstanding the jury verdict the court enter a judgment in his favor (a "judgment n. o. v."). Plaintiff had claimed to be entitled to attorneys' fees, but since the judgment for defendants was left in effect no fees were awarded.

In *Rainey II*, 481 F.2d 347 (CA5 1973), this court held that the district court should have granted Rainey a judgment n. o. v. in his favor on his claim for the academic year 1970–71. We recognized that his claim of a right to teach during that period, and to be paid for such services, had been partially mooted since he had taught under the authority of the injunction which this court had entered, and he had been paid. However, the issue of defendants' liability to Rainey with respect to the 1970–71 period

remained partly unsettled because of the question of whether he was entitled to an award of attorneys' fees.

In *Rainey II* we also held, with respect to Rainey's claims for periods after the 1970–71 academic year, that there was sufficient evidence for the jury to find that the refusal to offer him employment was not based on his exercise of protected First Amendment rights.

The opinion in *Rainey II* attempted to give some guidance to the district court concerning a proper award of fees. First, our opinion recognized that part of the work done by counsel on the second appeal related to the unsuccessful claims for periods after the end of the 1970–71 school year, and to this extent we held that plaintiff was not entitled to fees. However, it had been necessary for plaintiff to take the second appeal for other reasons. It was the means through which he could continue to try to establish the validity of his original position with respect to the 1970–71 year— *i. e.,* that his contract had been terminated because of his exercise of First Amendment rights, and to establish a right to attorneys' fees. We concluded that for work done on the second appeal fees should be awarded on the basis of one-half of a full fee.[2]

On remand from *Rainey II*, the plaintiff filed a written schedule by his lead attorney purporting to show the time counsel had spent on the case, broken down by hours and days. It showed 251 hours of work from the filing of suit through the first appeal and 165 hours devoted to the second appeal.[3] Plaintiff also presented testimony by experienced and highly regarded attor-

---

**2.** The two periods for which we held fees should be awarded—a full fee through the first appeal, one-half fee for the second appeal—had a hiatus between them embracing work done at the district court level after the first remand. This arose from the fact that in 1973 when *Rainey II* was decided, the Civil Rights Attorney's Fees Awards Act of 1976 had not been enacted. At that time, and in 1974 when the district court entered its fee award, attorney fees could be awarded only if the defendants were unreasonably and obdurately obstinate. We held in *Rainey II* that the defendants were guilty of such conduct but only through the

first appeal. The 1976 Act is retroactive and applies to cases pending at the time of its enactment. *See* note 4, *infra,* and accompanying text. Thus, if plaintiff had chosen to do so, in this third appeal he could have amended his claim to include payment for the hiatus period. He has not done so. *See* note 3, *infra.*

**3.** Counsel noted but did not claim compensation for 128 hours of work during the hiatus period, see note 2, *supra,* devoted to taking depositions, a hearing before the Board of Trustees, and trial and post-trial motions in the district court.

neys from Jackson that the minimum fee for an attorney's services performed in the Southern District of Mississippi is $35 per hour. This testimony was not controverted.

We discuss below the various factors which must be weighed in making an award of attorneys' fees, as set out in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (CA5 1974). At this point, it is sufficient to say that several of these factors are affected by the merits of Rainey's claim that he had been terminated because of his exercise of rights of free speech guaranteed by the First Amendment. Our opinion in *Rainey II* considered and made findings on the merits and entered a judgment sustaining Rainey's claim that his termination of employment was unconstitutional. 481 F.2d at 349–50: "[The] facts make out . . . a clear case of impermissibly freighting plaintiff's contract with a deprivation of the First Amendment right to free speech." 481 F.2d at 350. Also, our opinion spelled out these underlying facts. Plaintiff had a contract to teach at Jackson State for 1970–71. The contract was "withdrawn" or broken for the sole reason that it was discovered that the previous year, while he was teaching in another institution, Rainey had testified as an expert witness for the defense in an obscenity trial. The defense was successful, and Rainey received widespread publicity. A member of the Board of Trustees heard of his having testified and brought this to the attention of other trustees, which in turn caused the president of Jackson State to "withdraw" Rainey's contract. The trustees and the president then engaged in a series of explanations and reasons for their actions, some of which were pretexts, and all of which collapsed when a trustee testified on deposition and at trial that the testimony at the obscenity trial and the resulting publicity was the reason for "withdrawing" Rainey's contract. We held that "[T]he lack of a defense on the part of defendants [was] apparent." *Id.* Moreover, we held that defendants were guilty of "unreasonable and obdurate obstinacy."

■ With this history in mind we turn to decision. The defendants have cross-appealed on the ground that the Eleventh Amendment to the United States Constitution barred any award of attorneys' fees against the state. This contention has been overtaken by two events. The first is the Supreme Court's decision in *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). In *Fitzpatrick* the Court held that Congress pursuant to its enforcement authority under § 5 of the Fourteenth Amendment may authorize the award of damages and fees against a state in spite of the Eleventh Amendment. The second is the enactment of the Civil Rights Attorney's Fees Awards Act of 1976 (Pub.L. No.94–559, amending 42 U.S.C. § 1988). As amended 42 U.S.C. § 1988 now provides that

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985 and 1986 of this title, [chapter 38 of Title 20,] or in any civil action or proceeding, by or on behalf of the United States of America, to enforce or charging a violation of, a provision of the United States Internal Revenue Code, or [subchapter V of chapter 21 of this title,] the court, in its discretion may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

The combination of *Fitzpatrick* and the Civil Rights Attorney's Fees Awards Act of 1976 establishes that the Eleventh Amendment is no longer a bar to the award of attorney's fees against a state in actions under the statutes enumerated in the Act. However, two questions remain unanswered: (a) whether the Act applies to pending actions, and (b) if the Act is to be applied to pending actions, is an action "pending" when only the issue of attorneys' fees remains unresolved?

■ The legislative history of the Act clearly reveals that it was Congress' intent to have the award provisions apply to all cases pending at the time of enactment.[4]

4. H.R.Rep. No. 94–1558, 94th Cong., 2d Sess. 4 n. 6 (1976); 122 Cong.Rec. S17,052 (daily ed. Sept. 29, 1976) (remarks of Sen. Abourezk); 122 Cong.Rec. H12,155 (daily ed. Oct. 1, 1976)

While the legislative history of the Act sheds no light on whether a case in which the only active issue is the award of attorney's fees is "pending," the Supreme Court's decision in *Bradley v. School Board of City of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1973), strongly suggests that a case is still pending even if the only remaining issue is that of attorneys' fees. In *Bradley,* the Court authorized an award of attorneys' fees to plaintiffs in a school desegregation case under § 718 of the Education Acts Amendments of 1972, 20 U.S.C. § 1617, even though (a) there were no pending or appealable orders in the case except for attorneys' fees, and (b) § 718 had not been enacted until after initial submission of the case to the Court of Appeals. Although the Court in *Bradley* obviously did not consider the statute in the present case, the teachings of that case have direct applicability to the case at bar for two reasons. First, *Bradley* was not grounded on a specific consideration of § 718, but on the general principle that

a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary.

416 U.S. at 711, 94 S.Ct. at 2016, 40 L.Ed.2d at 488. Second, several times in the legislative history of the Civil Rights Attorney's Fees Awards Act of 1976 *Bradley* was cited as a prototypical case for awarding attorneys' fees in pending cases.[5] Neither the statute itself nor its legislative history gives any indication of a congressional intent not to have the Act apply to cases in which attorneys' fees is the only pending issue. Nor can it be said that requiring the defendants to pay attorneys' fees in this case

would be a "manifest injustice." Therefore, we hold that the award of attorney's fees in the case is authorized by the Act and that under the authority of *Fitzpatrick* such an award is not precluded by the Eleventh Amendment.[6]

■ We turn next to the question of the adequacy of the fees actually awarded. Briefly stated, the factors to be considered in awarding attorneys' fees under *Johnson v. Georgia Highway Express, Inc.* are:

(1) the time and labor required,

(2) the skill requisite to properly perform the legal services,

(3) preclusion of other employment by the attorney due to acceptance of the case,

(4) the novelty and difficulty of the questions presented,

(5) the customary fee,

(6) whether the fee is fixed or contingent,

(7) time limitations imposed by the client,

(8) the amount involved and the results obtained,

(9) the experience, reputation and ability of the attorneys,

(10) the undesirability of the case,

(11) the nature and length of the professional relationship with the client,

(12) awards in similar cases.

■ In this case, the first and foremost element is counsel's success, achieved over stringent opposition at district court and appellate levels. In *Rainey I* he obtained for plaintiff the right to be reinstated to the faculty of Jackson State for the 1970–71 year and to engage in teaching rather than research. In *Rainey II* he secured the

---

(remarks of Rep. Anderson); 122 Cong.Rec. H12,160 (daily ed. Oct. 1, 1976) (remarks of Rep. Drinan).

The Eighth Circuit has recently come to the conclusion, based upon its reading of this same legislative history, that the Act was meant to be applied to pending cases. *Finney v. Hutto,* 548 F.2d 740 (CA8 1977).

5. *E. g.,* H.R.Rep. *supra* note 4; Remarks of Sen. Abourezk *supra* note 4.

6. As the plain language of the Civil Rights Attorney's Fees Awards Act of 1976 makes clear, the award of fees is discretionary rather than mandatory. However, given the history of the present case, particularly this court's prior decision in *Rainey II,* it would be an abuse of discretion not to award such fees.

findings, entered by this court and discussed above, concerning the reasons for plaintiff's termination. The effect of these findings was mooted with respect to substantive relief of the right to teach, and to be paid, in 1970–71. But they have viable, continuing and permanent life as the recorded vindication of the correctness of Rainey's position. They operate as a declaratory judgment that he was not terminated at Jackson State for any reason other than his previous exercise of his First Amendment right to free speech. Obviously this is a significant matter for a professional teacher who, in the pursuit of his career, must seek employment at other institutions. And, beyond the bare parameters of effect on employment, the findings vindicate Rainey's position in the eyes of his professional colleagues and of the world at large.

Plainly this was not a "desirable" case. The State Board of Trustees of Institutions of Higher Learning are citizens of stature. One of the most active trustees is a well known Mississippi attorney, a fellow member of the Bar to plaintiff's attorney. The real reason for Rainey's difficulties—testifying for the defense in a criminal case charging obscenity—is such that Rainey's counsel incurred the risk of drawing public disfavor upon himself.

On the matter of time spent, the district court referred to the number of hours as "exorbitant" but did not find that counsel spent any less time than he showed in his breakdown. We eliminate from the time for work on the first appeal 14 hours spent after our opinion was handed down, on matters relating to costs. The time spent, as thus amended, is 237 hours at full rate, 165 hours at one-half rate.

■ The approach of the district court was incorrect in several respects. The court gave little, if any, weight to time spent, relying upon statements in pre-*Johnson* cases. The court was not at liberty to find, as it did, that hours spent in preparation are not a reliable or dependable source or a fair standard of measurement for an attorney fee. An attorney's record of time is not a talisman. But *Johnson* compels that time spent must be given real consideration as a factor. Accepting as correct the hours, as amended, which counsel states that he spent, the district court's fee award would have compensated plaintiff's counsel at a full rate of $5.75 per hour, a half rate of $2.87.

The court treated the case as only a civil suit for specific performance of a contract to teach for one year, and involving a salary of $11,000, which was paid. This overlooks the effect of the decision in *Rainey II* as a vindication of plaintiff's position. The court stressed the relative youth and inexperience of counsel. But we pointed out in *Johnson*, that "if a young attorney demonstrates the skill and ability, he should not be penalized for being only recently admitted to the Bar." 488 F.2d at 719. Finally, the court, in retrospect, considered the case to be uncomplicated. We need not repeat the history of the case. The long and rocky road which we have described does not support characterizing it as simple.

Taking into account the guidelines prescribed in *Rainey II* and the factors set out in *Johnson,* we hold that a reasonable attorneys' fee in this case should be, at a minimum, $35 per hour (for the "full rate" referred to in *Rainey II*) and $17.50 (for the "half rate"). The case is remanded to the district court with directions to enter a judgment awarding a fee of $11,182.50.

On the appeal, the judgment of the district court is VACATED and the cause REMANDED with directions. On the cross-appeal, the judgment is AFFIRMED.