Richard B. SAGERS

v.

YELLOW FREIGHT SYSTEM, INC., et al.

Civ. A. No. 14510.

United States District Court,
N. D. Georgia,
Atlanta Division.

Sept. 9, 1974.

See also, D.C., 388 F.Supp. 507.

Elizabeth R. Rindskopf, Atlanta, Ga., Jack Greenberg and William L. Robinson, New York City, for plaintiff.

Fisher & Phillips, Robert L. Mitchell, Atlanta, Ga., Mullinax, Wells & Mauzy, Dallas, Tex., for defendants.

## ORDER

RICHARD C. FREEMAN, District Judge.

In this class action for racial discrimination in employment, plaintiff sought declaratory and injunctive relief and money damages. In an order dated September 28, 1973, this court granted in part and denied in part plaintiff's motion for summary judgment.[1] Defendants in this action are the employer, a trucking company ("Yellow Freight"); a local union and the regional and international Teamsters organizations to which the local belongs ("the Unions").[2] While we found that the class and plaintiff as a member of the class are entitled to appropriate relief from the defendants' unlawful practices and their effects, including modification of the no-transfer rule and applicable seniority provisions, the court expressly delayed specification of the appropriate relief. The court reserved specification of appropriate relief for possible agreement by the parties, or, failing that, for further simplified procedures. In addition, the decision to reserve judgment as to relief was necessary in that the length of discrimination in hiring had not been determined in the summary judgment order.

Counsel for plaintiff Sagers and for defendant Yellow Freight subsequently submitted to this court a motion for summary judgment and a proposed decree as to relief for the class and requested that defendant Unions be required to file their responses thereto

---

1. The court also denied, in that order, the motion of defendant Yellow Freight System, Inc. for summary judgment.

2. In our order of September 28, 1973, we referred to the local union as "Local 728" and the regional and international unions as "the Unions." In this order, however, we mean to include Local 728 when referring to "the Unions."

within fifteen days. The court, on May 6, 1974, granted defendant Unions twenty days from the date of the order to file their concurrence in or objections to the proposed decree. Objections were filed on May 24, 1974 and are presently before the court for consideration.

■ Defendant Unions first object to the motion and proposed decree's award of transfer and seniority relief to "all presently employed black employees of Yellow [Freight] within the Southern Conference area (Texas, Oklahoma, Louisiana, Mississippi, Alabama, Tennessee, Georgia and Florida) who were employed prior to July 1, 1971." The Unions contend that transfer and seniority relief cannot properly be awarded because there exists no factual finding, and evidence has not been submitted, to the effect that (a) all members of the foregoing class sought and were denied employment as over-the-road drivers prior to July 1, 1971 or (b) such application for over-the-road employment, had it been made by such employees, would have been futile. They rely on Bing v. Roadway Express, Inc., 485 F.2d 441, 451–452 (5th Cir. 1973) (hereinafter *Bing II*).[3]

In *Bing II* the Fifth Circuit discussed in detail the proper relief in Title VII cases such as the action *sub judice*. The Court therein specifically rejected the position taken by the trial court and endorsed by the union that job seniority should be measured from date the transferee first applied for the road driving position and stated that "it is an unsound policy to date transferees' job seniority from their first application for transfer." *Id*. 485 F.2d at 451.[4] It chose to date the transferees' road unit seniority from the date they possessed the experience necessary to qualify them to enter the road driving unit. There is no indication in *Bing II* that the Court of Appeals sought to impose the new requirement on plaintiffs in Title VII cases of showing that each member of the class had actually sought the position that statistics clearly indicate was not open to blacks. Further, we emphasized in our prior order that the fact that few blacks may have applied for the road driver position was not dispositive.[5] Our finding that black persons have in the past been excluded from the position of road driver and have been limited to positions other than that of road driver on the basis of race clearly encompasses a conclusion that application for over-the-road employment would have been futile.

■ The Unions' second objection to the motion for summary judgment and submission of the proposed decree is that the decree provides for "carryover terminal seniority" without regard to whether vacancies existed and were

3. In Bing v. Roadway Express, Inc., 444 F. 2d 687 (5th Cir. 1971) (hereinafter *Bing I*), the Fifth Circuit Court of Appeals reversed a judgment in favor of the employer in a racial discrimination in employment action. It held that the employer's no-transfer policy served to perpetuate past racial discrimination and that there was insufficient business justification for the practice. It remanded the case for further proceedings consistent with that opinion.

4. The Court stated that:
 The trial court, taking a position endorsed by the union, would measure job seniority from the date when the transferee first applied for the road driving position. The rationale underlying this position is that we cannot determine if discrimination has occurred until an employee attempts to transfer. Since our goal is to put him in the position he would have enjoyed but for discrimination we must know when the discrimination occurred.
 We recognize the logic of that argument, but it fails to account for the realities of entrenched employment discrimination. If an employee realizes full well that blacks simply are not hired as road drivers, why should he bother to apply? Certainly a few, such as [the individual plaintiff], have the courage to fight "the system," but it is equally certain that others must have been intimidated and discouraged by [defendant's] discriminatory practices. For that reason we believe it is an unsound policy to date transferees' job seniority from their first application for transfer. *Id*. (footnote omitted.)

5. See order of September 28, 1973 at pages 10–11.

filled at or after the time class members became qualified to perform as over-the-road drivers. They contend that such an award of carryover seniority is contrary to law. Again, they rely on *Bing II* at 450–451.

In *Bing II* the Court of Appeals followed the "rightful place" theory previously adopted in the Fifth Circuit in Local 189, United Papermakers and Paperworkers v. United States, 416 F.2d 980 (5th Cir. 1969).[6] The Court emphasized that due to the employer's (Roadway) requirement of one year road driving experience for over-the-road driver applicants, dating the seniority from entry into employment regardless of qualifications upon arrival would give the transferees more seniority than they would have had in the absence of discrimination. Thus, the Court concluded that as to transferees who were not qualified to become road drivers until they had worked for Roadway for one year, their job seniority should not antedate the first anniversary of their arrival at Roadway. The proposed decree specifically provides for seniority as of the date of qualification for the road driver position:

> 5. Members of the class who transfer to road-driving jobs when vacancies occur shall carry their terminal seniority for all bidding purposes, provided they met the experience qualifications set forth in paragraph 3, above, as of their terminal seniority date; otherwise, their bidding seniority shall date from the later time at which they first met the above qualification. . . .

The Unions' contention that a specific independent showing of vacancies at or after the qualification date is required is not supported by the case law. In *Bing II* the Court of Appeals noted that the employer hired no new road drivers in Atlanta from October 18, 1968 to April 1972 and that in August 1969 they began laying off road drivers. This led the court to conclude that as to two members of the class seniority should be awarded as of the date of the application date, but the court expressly chose this date because it marked the earliest opportunity following their qualification dates at which they could have been hired as a road driver. *Id.* 485 F.2d at 451–452. Defendant Unions herein have made absolutely no effort in their objections to the proposed decree and to this motion for summary judgment to show the court that at certain periods vacancies in the over-the-road position were not available.

However, we note that the record discloses that no road drivers were hired at the Nashville terminal between 1959 and March 1969 or at the Dallas terminal from June 1965 to January 1969.[7] We find, therefore, that the proposed decree should be amended to provide that the bidding seniority of members of the class hired at the Nashville terminal after 1959 and prior to March 1969 should date from March 1969 or the date at which they first met the qualifications set forth in paragraph 3 of the proposed order, whichever is later. The seniority date of members of the class hired at the Dallas terminal after June 1965 and prior to January 1969 should date from

**6.** As stated in *Bing II* at 450, under that theory blacks are assured "the first opportunity to move into the next vacancies in positions they would have occupied *but for* wrongful discrimination and which they are qualified to fill.

**7.** *See* Response by Yellow Freight to plaintiff's motion for partial summary judgment at page 7, footnote. *See also* Unions' Reply to memorandum of [Yellow Freight] in response to plaintiff's motion for partial summary judgment at page 2. Plaintiff did not

contest this assertion, but only argued that the fact of no hiring at these terminals did not require the court to resort to national, rather than regional, statistics. *See* Plaintiff's Memorandum in reply to the defendants' responses to the summary judgment motion at page 5. The court found that regional statistics are the relevant evidence for the determination of the question of racial discrimination in hiring in the instant case. *See* Order of September 28, 1973, at page 11.

January 1969 or the date they met the requirements set out in paragraph 3 of the proposed decree, whichever is later.

In our order of September 28, 1974, the court found that black persons had in the past been excluded from the job of road driver and had been limited to positions other than that of road driver on the basis of race or color, but reserved the question of when such racial discrimination in hiring had ceased. Yellow Freight had argued that any racial discrimination in hiring ceased by July 1, 1968; it relied on national statistics in so arguing. As stated above, the court held in that order that regional rather than national statistics were the relevant evidence as to discrimination in this case. In support of the motion for summary judgment, plaintiff contended that discrimination had not ceased by July 1, 1968 and included statistical evidence as to hiring through May 12, 1972. Whether discrimination in employment lasted until that date need not be, and is not, determined by this court as plaintiff and Yellow Freight have agreed that the class in this action shall consist of all presently employed black employees of Yellow Freight within the Southern Conference area who were employed prior to July 1, 1971. Defendant Unions have not objected to the cut-off date set forth in the proposed decree as to class membership; nor have they asserted that another date would be more appropriate. The statistical evidence submitted by plaintiff fully supports the contention that racial discrimination in hiring lasted until that date; defendants have not sought to rebut that evidence or show that a material issue of fact exists as to discrimination in hiring prior to July 1, 1971. Accordingly, the court accepts a cut-off date of July 1, 1971 for class membership.

The last objection of the Unions to the proposed decree and motion for summary judgment is that the decree "improperly assesses one-half of plaintiff's reasonable attorney's fees against defendant unions." The Unions do not set forth any reason which causes them to believe that the provision as to attorney's fees [8] is improper. Neither do they cite any authority in support of the contention as to impropriety.

■ It is clear that it is within the discretion of the district court to allow the prevailing party reasonable attorney's fees in Title VII actions. 42 U.S. C. § 2000e–5(k).[9] The purpose of this provision is to effectuate the congressional policy against racial discrimination. Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 716 (5th Cir. 1974); Clark v. American Marine Corp., 320 F.Supp. 709 (E.D.La.1970), aff'd, 437 F.2d 959 (5th Cir. 1971). The attorney's fees provision has been liberally applied in the Fifth Circuit. Johnson v. Georgia Highway Express, Inc., *supra*. It has also been held that the court, in its discretion, may award to the prevailing party reasonable attorney's fees in a § 1981 action. Sabala v. Western Gillette, Inc., 362 F.Supp. 1142, 1155 (S.D. Tex.1973), *citing* Jinks v. Mays, 464 F. 2d 1223 (5th Cir. 1972).

■ We feel that the proposed decree properly allocated the responsibility for the discrimination among the various defendants. Sabala v. Western Gillette, Inc., *supra*. As in the *Sabala* case the employer is primarily responsible and, thus, is to bear one-half of the reasonable attorney's fees of the plaintiff.

8. The provision in the proposed decree as to attorney's fees provides:
    Defendant Company and Defendant Unions shall each pay half of plaintiff's reasonable attorney's fees and costs in this case. Counsel for all parties shall promptly attempt to resolve the questions concerning an appropriate amount. If they are unable to agree within 30 days, Plaintiff's counsel shall submit fee statements to the Court and a hearing will be scheduled.

9. 42 U.S.C. § 2000e–5(k) provides: In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . .

The other one-half of the reasonable attorney's fees is to be paid equally by the three union defendants.

Accordingly, the motion for summary judgment is granted and defendant Unions' objections to the proposed decree are overruled. As shown by the attached decree, the court adopts plaintiff's and Yellow Freight's proposed decree, as amended, however, consistent with this order.

### DECREE

The Court having rendered partial summary judgment finding prior racial discrimination in violation of Title VII of the Civil Rights Act of 1964 with respect to black persons employed by Defendant Yellow Freight System, Inc., throughout the Southern Conference Area, which persons are represented by Defendant International Union and Southern Conference Union, and finding that the collective bargaining agreement between Yellow and the Unions perpetuates the effects of past discrimination, and the Court further being advised by the decision of the United States Court of Appeals for the Fifth Circuit in Bing v. Roadway, Inc., 485 F.2d 441 (5th Cir., October 15, 1973); and the parties having consented to this Decree in order to avoid further litigation in the instant case, it is, therefore:

Ordered, adjudged and decreed:

The "class" in this action shall consist of all presently employed black employees of Yellow within the Southern Conference Area (Texas, Oklahoma, Louisiana, Mississippi, Alabama, Tennessee, Georgia and Florida) who were employed prior to July 1, 1971. This decree shall adjudicate and finally dispose of the claims or rights of class members with respect to positions as over-the-road drivers with defendant Yellow Freight System, Inc.

1. Within 30 days of this Decree, Yellow shall inform in writing by certified mail, return receipt, all members of the class of their rights under the Court's partial summary judgment dated September 27, 1973, to transfer to over-the-road driving jobs with seniority carryover as provided in paragraph 5 below of this Decree. A copy of such letter shall be presented for approval by Plaintiff's counsel and by the Court prior to mailing.

2. Members of the class shall have 30 days after receipt of the letter to express in writing their interest in transferring to an over-the-road driving position. Any member who does not so express such interest within the 30-day period shall be deemed to have waived any right to seniority carryover to road-driver jobs under this Decree. Any members of the class who transferred to road-driving jobs subsequent to the filing of this suit and who sacrificed seniority rights in making such transfer shall have their seniority restored as if they had made such transfer pursuant to this Decree.

3. Promptly upon execution of this Decree, and receipt of responses to the above 30-day notice, Yellow and representatives of the Plaintiff shall agree upon a qualification procedure to determine the present qualification of members of the class who have expressed interest in future transfers to such jobs pursuant to the above notice procedure. All members of the class who had timely expressed a desire for an over-the-road driving job and who can demonstrate one year tractor-trailer or two years straight truck driving experience or a combination thereof, shall be entitled to demonstrate their driving skill to qualify for such job. They shall be allowed a reasonable time period if they desire to familiarize themselves with company equipment prior to demonstrating their driving skills.

Any such person who fails such a test shall be entitled to retake the test if he desires in the presence of a neutral person agreed on by the member of the class and Yellow.

4. When vacancies occur in over-the-road driving positions, Yellow shall contact members of the class who have ex-

pressed an interest in transferring in order of their terminal seniority and the most senior individual on the list shall be offered the position if he possesses the qualifications to become an over-the-road driver. If no member of the class presently employed at the terminal requests and qualifies for the job, the job shall be offered to any members of the class employed at terminals which do not have road-driving domiciles but which are within the service area of the terminal having a road-driver vacancy. (The service areas are defined in Appendix A attached). Such job shall be awarded among qualified, competing members of the class based on company seniority.

(a) If any member of the class rejects an opportunity to transfer to an over-the-road driver position at the terminal where he is employed, or at the road-driver domicile serving the area where he is employed, he shall be deemed to have waived his right to transfer to any subsequent road-driver opening under this Decree.

5. Members of the class who transfer to road-driving jobs when vacancies occur shall carry their terminal seniority for all bidding purposes, provided that they met the experience qualifications set forth in paragraph 3, above, as of their terminal seniority date; otherwise their bidding seniority shall date from the later time at which they first met the above qualification. And provided further that the bidding seniority date of members of the class hired at the Nashville terminal after 1959 and prior to March, 1969 shall date from March, 1969 or the date at which they first met the qualifications set forth in paragraph 3, above, whichever is later; and provided further the bidding seniority of the members of the class hired at the Dallas terminal after June, 1965 and prior to January, 1969 shall date from January, 1969 or the date they first met the qualifications set forth in paragraph 3, above, whichever is later. Such members of the class shall retain company seniority for all fringe benefit purposes. In future competition for work opportu-

nity, layoff, bid preference and vacation schedule, members of the class shall compete based on their bidding seniority as determined above.

6. Members of the class who transfer to an over-the-road driving position shall have a 30-day probationary period during which they shall have the right to return to their former job without loss of seniority if they do not wish to continue road driving. Such a return shall constitute a rejection of an opportunity within the meaning of paragraph 3 above.

7. Yellow shall offer the first road-driver vacancy at the Atlanta Terminal to Plaintiff Sagers provided he then meets the physical qualification requirements. His bidding and fringe benefit seniority dates shall be determined as provided above for members of the class. In the event that Plaintiff Sagers is unable to take advantage of the transfer provisions of this paragraph or, having done so, returns to his former job within the 30-day probationary period, his seniority for all purposes shall be the date of his original hire with the Company. The Company shall also pay to Plaintiff Sagers back pay in the amount of $6,000 as full compensation for lost wages he has sustained in this action.

8. If no individuals in the class employed in the service area where a road-driver vacancy arises claim, within seven days *after its initial offer*, their right to fill such vacancy, Yellow may fill such over-the-road driver vacancies from any other source.

9. Subject to the availability of qualified black applicants, Yellow shall fill the vacancies described in paragraph 8 in the ratio of at least one black for every three other employees hired for such vacancies. Such obligation shall terminate at such time as the number of black over-the-road drivers at Yellow's terminals within the Southern Conference Area is approximately 20% of the total number of road-driver employees domiciled in said area in any reporting year provided for in paragraph 14 of this Decree.

10. Nothing in this Decree shall prevent Yellow from filling temporary vacancies by casual employees provided it is not done in such a manner as to interfere with its obligations under this Decree or its collective bargaining agreements.

11. Qualifications and requirements pursuant to this Decree with respect to the class shall not establish any precedent or prevent the application of other qualifying standards by any of the defendants hereafter for purposes not related to the subject matter of the instant action.

12. Yellow shall post a copy of this Decree in prominent locations at its terminals within the Southern Conference Area.

13. During the period for retained jurisdiction provide below, Yellow shall maintain individual employment records by name and race for the road-driver classification of all applications, hiring, promotions, transfers, disqualifications and dismissals in the Southern Conference. Defendant Teamsters Southern Conference shall maintain records of grievances filed by Yellow's black employees at terminals within the Southern Conference Area. Upon reasonable notice and for cause, Plaintiff's counsel shall have the right to inspect such records *and grievances.*

14. Within a reasonable time, not to exceed 120 days after the date of this Decree, and annually thereafter during the period for retained jurisdiction provided in paragraph 15 hereof, Yellow shall serve on Plaintiff's counsel such annual reports with respect to road-driver employment showing by terminal and by race as follows:

(a) Total number of employees at the end of the period;

(b) Number of persons hired and number of persons terminated during the period;

(c) Number of applicants for employment who were not hired during the period, if the individual's application is not pending at the end of the period, the name and address of all black applicants who are no longer under consideration;

(d) The name and status of all members of the class who have expressed an interest in transfer to over-the-road driving including those who were disqualified, and those who remain to be transferred;

(e) Such reports shall also include explanation and documentation of affirmative recruitment efforts among blacks during the period.

15. If in the opinion of Plaintiff's counsel there has been a violation of the terms of this Decree, such counsel shall notify the party in default in writing in detail of the alleged violation and that party shall have 30 days to correct any violation before Plaintiff shall bring it to the attention of the court. Grievances protesting implementation of this Decree and any questions raised by such grievances which require interpretation or application of the terms of this Decree shall be referred to the Court and shall not be submitted to contractual grievance procedures.

16. This Court shall retain jurisdiction of this cause for a period of three years from the date of this Decree for the purpose of issuing any and all additional orders as may be necessary to insure that equal opportunities for road-driver positions are provided all employees and prospective employees at Yellow's terminals within the Southern Conference Area without regard to race or color.

17. Defendant Company and Defendant Unions shall each pay half of Plaintiff's reasonable attorney's fees and costs in this case. Counsel for all parties shall promptly attempt to resolve the questions concerning an appropriate amount. If they are unable to agree within 30 days, Plaintiff's counsel shall submit fee statements to the Court and a hearing will be scheduled.

18. This Decree is a final judgment granting an injunction pursuant to Rule 62(a) and (c), Federal Rules of Civil Procedure.

Appendix "A" to follow

## APPENDIX "A" TO CONSENT DECREE

### SERVICE AREAS

Terminals within the following service areas shall be considered attached to the following road-driver domiciles for purposes of this Consent Decree:

| Road-Driver Domicile | Service Area |
| --- | --- |
| Atlanta, Georgia | All terminals in the State of Georgia, plus Mobile, Ala., Birmingham, Ala., Gadsden, Ala., and Decatur, Ala. |
| Nashville, Tenn. | All terminals in Tennessee *except* Memphis and Jackson. |
| W. Memphis, Ark. | Memphis, Tennessee and Jackson, Tennessee. |
| Dallas, Texas | Wichita Falls, San Antonio, Sherman, Corpus Christi, Fort Worth, Brownsville, Waco, Houston, Austin, Beaumont. |
| Marshall, Texas | None; this small relay station will be kept small. |
| Ft. Smith, Ark. | Springdale, Ark., Tulsa, Okla. and Oklahoma City, Okla. |
| Amarillo, Tex. | Lubbock, Tex. and El Paso, Tex. |
| Chattanooga, Tenn. | None; road domicile to be closed pending regulatory application. |