United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 23, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-60091

_____

FLORIAN JUAN CAVAZOS

Petitioner

v.

ALBERTO R GONZALES, U S ATTORNEY GENERAL

Respondent

_____

Petition for Review of an Order of the
Board of Immigration Appeals,
BIA No. A78 317 893

_____

Before KING, SMITH, and BENAVIDES, Circuit Judges.

KING, Circuit Judge:*

Petitioner Florian Juan Cavazos petitions this court for review of an order of the Board of Immigration Appeals that adopted and affirmed a decision of the immigration judge denying her motion to reopen removal proceedings. The Board denied the motion to reopen because (1) it was untimely filed pursuant to 8 C.F.R. § 1003.23(b); and (2) Cavazos had failed to leave the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

-1-

United States pursuant to an order of voluntary departure. For the following reasons, we DENY the petition for review.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Florian Juan Cavazos ("Cavazos"), a 49-year-old native and citizen of the Philippines, was admitted into the United States at Los Angeles, California on June 16, 2001 as a nonimmigrant visitor on a B-1 visa. Although the visa permitted her to stay in the United States only until July 15, 2001, Cavazos remained in the United States past the expiration date of her visa without authorization. On May 5, 2002, she married Adam Cavazos, a United States citizen, in Los Angeles County, California, where the couple apparently resided.[1]

In July 2002, immigration officials detained Cavazos while she was traveling to El Paso, Texas, to join her husband, who was tending to damage to his home from recent flooding in the area.[2] On July 19, 2002, the Department of Homeland Security ("DHS") served Cavazos with a Notice to Appear, charging her with removal

---

[1]  At the time she entered the United States, Cavazos was married to Ricardo Achilles Alvarez Doctor, but that marriage was formally dissolved pursuant to a Divorce Decree issued by a family court in Clark County, Nevada, on March 25, 2002.

[2]  There is some discrepancy about whether Cavazos was actually en route to El Paso or San Antonio at the time she was detained by immigration officials. At her initial hearing, Cavazos contradicted her and her husband's declarative statements and requested a change of venue to San Antonio. Because Cavazos does not challenge the denial of her motion to change venue, her precise destination at the time she was detained does not matter for the purposes of this appeal.

under 8 U.S.C. § 1227(a)(1)(B) for remaining in the United States for a period of time longer than permitted. At her master calendar hearing on October 17, 2002, Cavazos and her husband appeared before the El Paso Immigration Court without representation. The immigration judge ("IJ") advised Cavazos to obtain legal representation before entering pleas to the allegations and charge against her.

Cavazos subsequently retained the services of an accredited representative,[3] Carmen Guerrero ("Guerrero"), who first appeared before the immigration court on behalf of Cavazos on February 27, 2003.[4] Guerrero conceded that Cavazos was removable under 8 U.S.C. § 1227(a)(1)(B) based on the factual allegations in the Notice to Appear. Guerrero also informed the IJ that Cavazos would be seeking adjustment-of-status relief under 8 U.S.C. § 1255.[5] An individual merits hearing was set for May 6, 2003.

Cavazos, accompanied by Guerrero, appeared before the IJ at the merits hearing on May 6, 2003. Cavazos reports--and the

---

[3] A person entitled to representation in immigration proceedings may select an accredited representative to fulfill this role. See 8 C.F.R. § 292.1(a)(4).

[4] At this hearing, the IJ waived the appearance of Cavazos.

[5] In order to request a discretionary grant of adjustment-of-status relief from the Attorney General, an alien must (1) make an application for such adjustment, (2) demonstrate that he is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) show that an immigrant visa is immediately available to him at the time his application is filed. 8 U.S.C. § 1255(a).

government does not contest--that her husband had submitted a Petition for Alien Relative (Form I-130) that was still pending approval at the time of the hearing.  The record also indicates that Mr. Cavazos had received a Request for Additional Evidence, dated May 6, 2003, that informed him of the need to provide within thirty days additional evidence of a "joint life" with his wife to gain approval of the Form I-130.  Without sufficient evidence of the bona fide nature of the marriage, Cavazos would be unable to provide the necessary basis for demonstrating that a visa would be "immediately available" on her Application to Register Permanent Residence or Adjust Status (Form I-485).  See 8 C.F.R. § 245.2(a)(2)(i)(A) ("An immigrant visa must be immediately available in order for an alien to properly file an adjustment application under [8 U.S.C. § 1255].").[6]

Rather than moving for a continuance from the IJ to allow additional time to complete the process of applying for adjustment of status, Guerrero requested voluntary departure pursuant to 8 U.S.C. § 1229c.  In requesting voluntary departure, Guerrero stated that if the Form I-130 were approved within the period before her voluntary departure date, then Cavazos would request that her case be reopened in order to seek a discretionary grant of adjustment-of-status relief under 8 U.S.C.

---

[6]  This does not mean that a Form I-130 must necessarily be approved prior to filing the Form I-485.  In fact, Form I-130 itself expressly provides that both forms may be filed concurrently with the appropriate service center.

-4-

§ 1255(a). The government's attorney stated that it would not oppose a motion to reopen under those conditions, and the IJ agreed that he would reopen the case if Cavazos completed the application for adjustment of status before the voluntary departure date. The IJ accordingly granted the request for voluntary departure and issued a Written Decision and Order on May 6, 2003.[7]

The Written Decision and Order clearly sets forth the terms of the voluntary departure order as follows:

> The Respondent sought and was granted the relief of voluntary departure pursuant to [8 U.S.C. § 1229c]. The Government did not oppose the grant of voluntary departure. Under the terms of the grant of voluntary departure, the Respondent has until September 3, 2003, to voluntarily depart the United States and return to her native country of the Phillippines [sic]. Failure to do so will result in the Respondent being found ineligible for certain forms of relief for a period of ten years, including: voluntary departure, cancellation of removal, and adjustment of status.
> . . . .
> IT IS THE ORDER OF THIS COURT THAT THE RESPONDENT IS HEREBY GRANTED VOLUNTARY DEPARTURE, PURSUANT TO [8 U.S.C. § 1229c], WITH A VOLUNTARY DEPARTURE DATE NO LATER THAN SEPTEMBER 3, 2003. BY THAT DATE THE RESPONDENT MUST HAVE VOLUNTARILY DEPARTED FROM THE UNITED STATES TO HER NATIVE COUNTRY OF THE PHILLIPPINES [sic].

R. at 194. The departure date reflects the 120-day maximum allowable statutory period during which an immigrant must leave

---

[7] When the IJ asked if seeking voluntary departure was the best course of action under the circumstances, Guerrero responded that it was in the best interests of Cavazos and expressly waived appeal of all issues in regard to the case. Cavazos did not express any dissatisfaction with this course of action at the time.

the United States pursuant to a voluntary departure order that an IJ may grant in lieu of or prior to the completion of removal proceedings.[8]  See 8 U.S.C. § 1229c(a)(2)(A).  The IJ personally served a copy of the decision on Cavazos, Guerrero, and the government on May 6, 2003, and sent an additional advisement the next day reminding Cavazos that failure to voluntarily depart by the scheduled date would result in certain statutorily prescribed penalties.[9]  The additional advisement also informed Cavazos that failure to voluntarily depart by September 3, 2003 would be excused only under "exceptional circumstances" such as "serious illness of the alien or death of an immediate relative of the alien, but not including less compelling circumstances."  R. at

---

[8]  Because the IJ had previously agreed to reopen her proceedings if Cavazos completed her adjustment-of-status application before the voluntary departure date, this effectively gave Cavazos an additional thirty days to file her motion to reopen the removal proceedings.  Compare 8 U.S.C. § 1229c(a)(2)(A) (providing a 120-day period for voluntary departure orders granted in lieu of or prior to the completion of removal proceedings) with 8 U.S.C. § 1229a(c)(7)(C)(i) (providing a 90-day period after the date of entry of a final administrative order of removal to file a motion to reopen).

[9]  The civil penalties for remaining in the United States past a designated voluntary departure date are set forth under 8 U.S.C. § 1229c(d)(1), which provides:
> [I]f an alien is permitted to depart voluntarily under this section and voluntarily fails to depart the United States within the time period specified, the alien--
>> (A) shall be subject to a civil penalty of not less than $1,000 and nor more than $5,000; and
>> (B) shall be ineligible, for a period of 10 years, to receive any further relief under this section and sections 1229b, 1255, 1258, and 1259 of this title.

-6-

46.

The following chronology sets forth the relevant sequence of events that transpired beginning with the issuance of the voluntary departure order:

| | |
|---|---|
| May 6, 2003: | IJ issues voluntary departure order. |
| July 16, 2003: | Cavazos first retains the services of a new lawyer, the firm of Reeves & Associates. |
| July 22, 2003: | Richard Wilner, an attorney from Reeves & Associates, sends a letter to Guerrero requesting that Guerrero forward the contents of Cavazos's file to Wilner.[10] |
| August 4, 2003: | Statutory deadline for filing motion to reopen pursuant to 8 U.S.C. § 1229a(c)(7)(C)(i); Cavazos does not file a motion to reopen at this time. |
| August 29, 2003: | DHS denies Cavazos's request for an extension of time in which to leave the United States pursuant to the voluntary departure order. |
| September 3, 2003: | Cavazos's last day to leave the United States pursuant to the voluntary departure order; Cavazos remains in the United States. |
| September 9, 2003: | Immigration court first notified that Cavazos had retained new counsel via a letter from a different attorney from Reeves & Associates, Juliana Butler, accompanied by a completed Form EOIR-28, requesting the court's permission to review the audio tapes |

---

[10] The immigration court did not receive a completed Form EOIR-28 (Notice of Entry of Appearance as an Attorney) for Wilner until December 1, 2003.

                        of Cavazos's removal proceedings.[11]

          September 15, 2003:   Immigration   court forwards the
                                requested hearing tapes to Butler.

          December 1, 2003:     Immigration court receives a "Motion
                                to Reopen Removal Proceedings and
                                for a Stay of Removal; Motion for a
                                Change   of   Venue"   [hereinafter
                                "motion to reopen"], dated October
                                28, 2003 and signed by Orit Levit,
                                another   attorney   from Reeves   &
                                Associates.[12]

Cavazos filed the motion to reopen in order to pursue her

application for adjustment of status under 8 U.S.C. § 1255,

claiming that Guerrero's ineffective assistance had substantially

prejudiced her case by requesting a grant of voluntary departure

rather than a continuance.  Cavazos further argued that

Guerrero's waiver of her appeal rights compounded the error and

potentially exposed Cavazos to civil penalties under 8 U.S.C.

§ 1229c(d), including the ten-year period during which she would

be ineligible to apply for adjustment of status if she did not

leave the United States on her designated voluntary departure

date.  Based on these claims, Cavazos requested that the IJ

equitably toll the statutory ninety-day period within which an

---

[11]  Butler also sent a letter, dated August 11, 2003, to
Guerrero again asking her to turn over Cavazos's file.  Guerrero
apparently never responded to any request to turn over the file.

[12]  Cavazos makes no effort to explain, and the record does
not show, the reason for the approximately one-month discrepancy
between the date on the motion itself and the date it was
received by the immigration court.  Further, the immigration
court did not even receive a completed Form EOIR-28 for Levit
until January 15, 2004.

-8-

alien may file a motion to reopen under 8 U.S.C.

§ 1229a(c)(7)(C)(i).

On March 29, 2004, relying on the factors in Matter of Velarde, 23 I&N Dec. 253 (BIA 2002),[13] the IJ denied the motion to reopen. First, the IJ found that the motion was not timely filed within ninety days of entry of a final administrative order of removal, deportation, or exclusion. In refusing to equitably toll the ninety-day filing limitation based on the allegedly ineffective assistance of counsel of Guerrero, the IJ noted that Cavazos had shown no dissatisfaction with the representation at the time the voluntary departure order was issued on May 6, 2003. Moreover, the IJ determined that Cavazos had failed to justify the lengthy delay in filing the motion to reopen on December 1, 2003--more than four months after she first hired a new lawyer and nearly three months after the voluntary departure date had passed. Therefore, although the IJ found that Cavazos had met the procedural requirements for making a claim of ineffective assistance of counsel under Matter of Lozada, 19 I&N Dec. 637

---

[13] Under Matter of Velarde, 23 I&N Dec. at 254, a motion to reopen may be granted to provide an alien an opportunity to pursue an application for adjustment of status where the following factors are present: (1) the motion is timely filed; (2) the motion is not numerically barred by the regulations; (3) the motion is not barred by Matter of Shaar, 21 I&N Dec. 541 (BIA 1996), or any other procedural grounds; (4) the motion presents clear and convincing evidence indicating a strong likelihood that the respondent's marriage is bona fide; and (5) the Service either does not oppose the motion or bases its opposition on Matter of Arthur, 20 I&N Dec. 475 (BIA 1992). The IJ found Cavazos had met the second and fifth factors under Velarde.

-9-

(BIA 1988),[14] she had failed to demonstrate actual prejudice from the representation.  Second, the IJ found that the motion to reopen was barred by Matter of Shaar, 21 I&N Dec. 541 (BIA 1996), because Cavazos had failed to depart the United States by her designated voluntary departure date of September 3, 2003 without demonstrating any "exceptional circumstances."  The IJ noted that the court "simply can not find a nexus between [Cavazos's] failure to comply with the granted order of voluntary departure, and the representation provided by [Guerrero]."  R. at 60. Accordingly, the IJ found that Cavazos had "willfully and unlawfully" remained in the United States beyond the voluntary departure period was therefore "statutorily ineligible for the relief requested, that being a motion to reopen."  Id.  Finally, the IJ found that, even though Cavazos had submitted evidence supporting the bona fide nature of the marriage, she had still not provided the immigration court with an approved Form I-130 to demonstrate that she had a visa immediately available.[15]

---

[14]  Under Lozada, 19 I&N Dec. at 639, a motion to reopen alleging ineffective assistance of counsel must include: (1) an affidavit by the respondent detailing the agreement with former counsel; (2) evidence that the counsel has been informed of the allegations leveled against him and that she has been afforded the opportunity to respond; and (3) information whether a complaint has been filed with the appropriate disciplinary authorities.  The respondent must also demonstrate actual prejudice.  Id. at 638.

[15]  For the same reasons, the court denied Cavazos's motion for a stay of removal.  Given the denial of the motion to reopen, the motion for a change of venue was also denied.

On December 9, 2004, the Board of Immigration Appeals ("BIA") adopted and affirmed the decision of the IJ to deny the motion to reopen because (1) the motion was untimely filed pursuant to 8 C.F.R. § 1003.23(b); and (2) Cavazos had failed to depart within the voluntary departure period. Cavazos timely petitioned this court for review of the BIA's denial of her motion to reopen.

## II.  DISCUSSION

### A.    Standard of Review

As a general matter, motions to reopen removal proceedings are disfavored. Lara v. Trominski, 216 F.3d 487, 496 (5th Cir. 2000); see also INS v. Doherty, 502 U.S. 314, 323 (1992) ("This is especially true in a deportation proceeding, where, as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States."). We therefore review the BIA's denial of a motion to reopen under a "highly deferential" abuse-of-discretion standard. Lara, 216 F.3d at 496; see also Efe v. Ashcroft, 293 F.3d 899, 904 (5th Cir. 2002). "'It is our duty to allow [the] decision to be made by the Attorney General's delegate, even a decision that we deem in error, so long as it is not capricious, racially invidious, utterly without foundation in the evidence, or otherwise so aberrational that it is arbitrary rather than the result of any perceptible rational approach.'" Efe, 293 F.3d at

-11-

904 (citing <u>Osuchukuwu v. INS</u>, 744 F.2d 1136, 1141-42 (5th Cir. 1984)).

**B.   Analysis**

Cavazos presents two principal arguments on appeal: (1) that the BIA erred by not equitably tolling the ninety-day limitation period for filing a motion to reopen based on Guerrero's allegedly ineffective assistance; and (2) that the BIA erred in denying Cavazos's motion to reopen based on her failure to leave the United States pursuant to the voluntary departure order.  The government responds that, even assuming the doctrine of equitable tolling applies in this context, Cavazos did not show the requisite due diligence in bringing her claim for ineffective assistance of counsel to justify tolling the limitation period under these circumstances.  The government also contends that Cavazos failed to demonstrate any "exceptional circumstances" that would excuse her remaining in the United States beyond the scheduled voluntary departure date.

**1.   Equitable Tolling of Filing Period for Motion to Reopen**

Cavazos contends that Guerrero first rendered ineffective assistance of counsel by failing to adequately prepare and pursue Cavazos's application for adjustment of status before her merits hearing on May 6, 2003.  According to Cavazos, this problem was compounded when Guerrero requested voluntary departure in lieu of moving for a continuance, apparently hoping that DHS would

approve the pending Form I-130 before the voluntary departure date passed.  Cavazos claims that these actions substantially prejudiced her ability to adjust her status through her husband under 8 U.S.C. § 1255 and thereby remain in the United States. Cavazos also insists that Guerrero's refusal to send Cavazos's new attorneys the case file further hampered her new attorneys' ability to timely file the motion to reopen.  As a result, Cavazos now argues that the ninety-day period should have been equitably tolled because her new counsel did not actually become aware of Guerrero's ineffective assistance until reviewing the audio tapes of the merits hearing following a request to the immigration court on September 9, 2003.  See Iavorski v. INS, 232 F.3d 124, 134 (2d Cir. 2000) (noting, in the context of a motion to reopen alleging ineffective assistance of counsel, that "equitable tolling of a statute of limitations is permitted until the fraud or concealment is, or should have been, discovered by a reasonable person in the situation").

The government maintains that, even if equitable tolling were available,[16] the BIA did not abuse its discretion in refusing to apply the doctrine under the circumstances in this

---

[16] While acknowledging that this circuit has yet to decide the issue, Cavazos notes that several of our sister circuit courts have applied equitable tolling principles in this context to accommodate claims of ineffective assistance of counsel under certain circumstances.  See, e.g., Riley v. INS, 310 F.3d 1253, 1258 (10th Cir. 2002); Socop-Gonzalez v. INS, 272 F.3d 1176, 1188 (9th Cir. 2001) (en banc); Iavorski, 232 F.3d at 134.

case.  The government contends that equitable tolling is appropriate only when, despite all due diligence, a plaintiff is unable to discover essential information bearing on the existence of a claim.  See Pacheco v. Rice, 966 F.2d 904, 906-07 (5th Cir. 1992) (noting, in a Title VII case, that equitable tolling imposes a "requirement of diligent inquiry" on the party seeking this sort of relief).  Given the information available to Cavazos during the nearly seven months between the date of the voluntary departure order (May 6, 2003) and the date the motion to reopen was finally filed with the immigration court (December 1, 2003), the government argues that this is not the type of extraordinary situation that warrants equitable tolling.

Although equitable tolling depends upon the particular facts and circumstances of each case, we have previously noted that the doctrine should be employed only in "rare and exceptional circumstances."  United States v. English, 400 F.3d 273, 275 (5th Cir. 2005).  The Supreme Court has previously discussed the narrowly circumscribed nature of the equitable tolling doctrine:

> Federal courts have typically extended equitable relief only sparingly.  We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.  We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.

Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)

-14-

(internal footnotes omitted); see also Rashidi v. Am. President Lines, 96 F.3d 124, 128 (5th Cir. 1996) (noting that a "garden variety claim of excusable neglect does not support equitable tolling") (internal quotation marks omitted); Jinks v. Mays, 464 F.2d 1223, 1227 (5th Cir. 1972) (quoting the oft-cited maxim that "equity aids the vigilant").

Assuming that equitable tolling is available in this context,[17] we conclude that the BIA did not abuse its discretion in affirming the finding of the IJ that Cavazos had failed to show the requisite due diligence to warrant equitable tolling of the period during which an alien may timely file a motion to reopen. In denying the motion to reopen, the IJ specifically stated that, although Cavazos had met the procedural requirements for filing a motion to reopen claiming ineffective assistance of counsel under Lozada, she had failed to demonstrate any actual prejudice from the Guerrero's representation. This finding is wholly consistent with our case law requiring a showing of "substantial prejudice" to prove a claim of ineffective assistance of counsel. See De Zavala v. Ashcroft, 385 F.3d 879,

---

[17] In an unpublished decision, we previously discussed "the discord among the circuits as to equitable tolling of statutory deadlines for ineffective assistance of counsel in immigration cases." Panova-Bohannan v. Gonzales, 157 F. App'x 706, 707-08 n.6 (5th Cir. 2005) (unpublished decision) (concluding that the BIA had not abused its discretion in finding that the alien had failed to exercise due diligence to justify equitably tolling the limitations period for filing her motion to reopen based on allegations of ineffective assistance of counsel).

883 (5th Cir. 2004) (noting that "an alien must make an initial showing of substantial prejudice" to prevail on a claim of ineffective assistance of counsel) (citing Anwar v. INS, 116 F.3d 140, 144 (5th Cir. 1997)); Miranda-Lores v. INS, 17 F.3d 84, 85 (5th Cir. 1994) ("To prevail on a claim of ineffective assistance of counsel at a deportation proceeding, an alien must show (1) ineffective representation and (2) substantial prejudice, which occurred as a result of the ineffective representation.") (emphasis added). Therefore, we agree with the BIA's adoption and affirmance of the IJ's finding that Cavazos was unable to sufficiently establish the necessary nexus between Guerrero's representation at the merits hearing on May 6, 2003, and the nearly seven months that passed before her new lawyers finally submitted the motion to reopen on December 1, 2003.

Even assuming arguendo that Guerrero had rendered ineffective assistance at the merits hearing, Cavazos's failure to file the motion to reopen until nearly three months after the voluntary departure date had passed does not demonstrate the sort of due diligence and exceptional circumstances necessary to invoke the equitable tolling doctrine. See English, 400 F.3d at 275; Oliveira v. Gonzales, 127 F. App'x 720, 723 (5th Cir. 2005) (declining to equitably toll the statutory limitations period for filing a motion to reopen based on ineffective assistance of counsel because the alien was represented by different counsel by the time the BIA affirmed the IJ's decision not to reopen the

-16-

proceeding); Panova-Bohannan, 157 F. App'x at 707 (concluding that the BIA had not abused its discretion in refusing to equitably toll the limitations period for filing a motion to reopen alleging ineffective assistance of counsel where the alien failed to demonstrate "due diligence during the interstitial period after the passing of the deadline").  In light of these circumstances, we conclude that the BIA did not abuse its discretion in denying the motion to reopen as untimely.[18]

### 2.    Failure to Leave Pursuant to Voluntary Departure Order

Finally, Cavazos similarly argues that the alleged ineffective assistance of counsel constituted an "exceptional circumstance" that allowed her to file the untimely motion to reopen despite her failure to leave the United States by the date specified in the voluntary departure order.  Again, Cavazos attributes the lengthy delay in filing the motion to reopen to the allegedly ineffective assistance of Guerrero at the merits

---

[18]    Furthermore, even if additional information was needed to substantiate the ineffective assistance claim under Lozada, we fail to see why her new counsel waited to request permission to review the audio tapes of her removal proceedings until September 9, 2003--six days after her scheduled date of voluntary departure had passed and nearly two months after first being retained by Cavazos.  Cf. United Klans of Am. v. McGovern, 621 F.2d 152, 155 (5th Cir. 1981) (concluding that a claim was time-barred for want of due diligence and noting that plaintiffs are "chargeable with knowledge of the contents of public records").  At the very least, when DHS denied Cavazos's request for extending the voluntary departure date on August 29, 2003, her new lawyers should have realized that failing to submit the motion to reopen before the impending voluntary departure date could expose Cavazos to the statutory civil penalties under 8 U.S.C. § 1229c(d)(1).

hearing on May 6, 2003 in requesting voluntary departure, rather than a continuance, to pursue adjustment-of-status relief. The government responds that the plain language of 8 U.S.C. § 1229a(e)(1) narrowly defines the range of "exceptional circumstances" as "battery or extreme cruelty to the alien or any child or parent of the alien, serious illness of the alien, or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances." The government maintains that Cavazos's effort to bring her claim for ineffective assistance of counsel does not fall within this class of "exceptional circumstances." Therefore, the government contends that the adjustment-of-status relief she seeks is no longer available to her.

Once the voluntary departure date has passed, an alien is subjected to the statutory bar from certain forms of relief, including adjustment of status. See 8 U.S.C. § 1229c(d)(1). By waiting until December 2003 to file the motion to reopen, Cavazos's new attorneys exposed their client to the serious consequences of 8 U.S.C. § 1229c(d)(1) from staying past the scheduled date of voluntary departure and relied on narrowly construed principles of equity to excuse this delay. For substantially the reasons set forth in the IJ's opinion, we have already determined that the equities present in this case do not favor tolling the limitations period for the motion to reopen; we therefore decline to excuse Cavazos's failure to leave the United

-18-

States pursuant to the clear terms of the voluntary departure order.  Accordingly, we conclude that the BIA did not abuse its discretion in dismissing Cavazos's appeal for failure to file her motion to reopen before the scheduled voluntary departure date.

### III.  CONCLUSION

For the foregoing reasons, we DENY the petition for review.